(No. 21812.—

WILLIAM C. DEWOLF, Appellee, *vs.* WILLIAM BOWLEY, County Clerk, *et al.* Appellants.

*Opinion filed February 23, 1934—Rehearing denied April 4, 1934.*

ALEXANDER J. STROM, for appellants.

ROY F. HALL, for appellee.

Per CURIAM: This is a direct appeal from the judgment of the circuit court of Boone county awarding a writ of *mandamus* directing the appellant county clerk to issue warrants upon the treasurer of that county payable to the order of appellee, as provided under section 1 of "An act in relation to the retirement and pensioning of judges of courts of record in Illinois," in force July 1, 1919. (Cahill's Stat. 1933, chap. 37, pars. 31, 32.) The county of Boone was also made a party respondent.

Three principal grounds are assigned for reversal of the judgment: (1) The Pension act is unconstitutional; (2) it does not apply to appellee; and (3) it was error to enter judgment without hearing evidence.

Appellants argue that this statute violates sections 19 and 20 of article 4 and sections 10 and 11 of article 9 of

the constitution of this State. The act consists of two sections, and is as follows:

"Sec. 1. That any judge of a court of record in the State of Illinois, whether of the Supreme, circuit, superior, probate, county, city or municipal court, who has served as a judge in any one or more of said courts for a period or periods aggregating twenty-four years, shall, when he reaches the age of sixty-five years, and shall by resignation or otherwise have ended such service, shall, after such service of twenty-four years, and after reaching the age of sixty-five years, be entitled to and shall receive annually a pension during the remainder of his life for a sum equal in amount to one-half the sum annually received as compensation for his judicial service during the last year thereof.

"Sec. 2. The said pension of any such judge, after such retirement or end of service and reaching the age of sixty-five years, shall be paid in the same manner as the salary of such judge was paid during his period of service from State, county or city respectively or out of moneys not otherwise appropriated."

Section 19 of article 4 of the constitution of this State prohibits the General Assembly granting or authorizing extra compensation, fee or allowance to any public officer, agent, servant or contractor after service has been rendered or a contract made, and prohibits authorization of the payment of any claims, or part thereof, against the State under any agreement or contract made without express authority of law. Section 20 declares that the State shall never pay, assume or become responsible for the debts or liabilities of or in any manner give, loan or extend its credit to or in aid of any public or other corporation, association or individual. Section 10 of article 9 prohibits the levy or imposition of taxes by the General Assembly upon municipal corporations, or the inhabitants or property thereof, for corporate purposes, but shall require that all taxable property within the limits of municipal corporations shall

be taxed for that purpose in a uniform manner with respect to persons and property. Section 11 of article 9 provides, in part, as follows: "The fees, salary or compensation of no municipal officer who is elected or appointed for a definite term of office shall be increased or diminished during such term."

Pensions have generally been sustained on the ground that public benefit accrues in two ways: by encouraging such officers or employees to remain in the service, and by retiring from public service those who have become incapacitated from performing the duties as well as they might be performed by younger or more vigorous persons. (1 Dillon on Mun. Corp. (5th ed.) sec. 430.) Cooley, in his treatise on taxation, (1 Cooley on Taxation, (3d ed.) 189,) presents the view of courts generally of this country concerning pensions, that their primary object is not a private but public interest, to show appreciation for meritorious public service, which may reasonably be expected to have a powerful influence in inducing long and continued service. He expresses the opinion that the power of the legislature to pass such acts is undoubted. Such pensions, generally, are not considered donations or gratuities but inducements to continued service.

All of the major nations of the world have had in force judicial pension systems for many years. In England pensions were first granted to judges of courts of review by general statute in 1799. (39 George III, chap. 110; 8 Foss on Judges of England, 199.) France has had a comprehensive pension system for judges since 1853. (De'cret March 1, 1852; L. June 9, 1853.) Germany has had such a system in force since 1877. (Court Organization Stat. Jan. 27, 1877.) Canada has provided pensions for judges since 1906. (Rev. Stat. 1906, chap. 138.) The United States has provided a voluntary retirement of all Federal judges on pension since 1869. (Judicial Code, sec. 260; 40 Stat. 1157.) Eighteen States of this coun-

try have established systems of judicial pension. They are: Arkansas—Acts 1923, p. 369. Colorado—Laws 1925, chap. 168, p. 504. Connecticut—Public Acts 1919, chap. 210, as amended. Florida—Laws 1923, chap. 9278, p. 311. In Illinois the Pension law here considered has been in effect since 1919. (Laws 1919, p. 413.) Louisiana has provided judicial pensions in her constitution. (Const. 1921, art. 7, secs. 7, 8.) Maine—Rev. Stat. 1916, chap. 117, sec. 7. Maryland—Ann. Code 1924, art. 26, sec. 46. Pensions for judges have been in effect in that State since 1904. Massachusetts—Gen. Laws 1921, chap. 32, secs. 61, 62. Such provision has been made in the constitution of that State as amended in 1918. (Const. art. 140.) The pension system in Massachusetts was started in 1885. Minnesota—Gen. Stat. 1923, secs. 210, 211. Minnesota has had on her statute books a system of judicial pension since 1913. New Jersey—Laws 1920, chap. 107, p. 233. New York—Laws 1926, chap. 724, p. 1350. New York has provided retirement pensions for justices of the Court of Appeals since 1911 and supreme court and other judges since 1909. It has also a constitutional provision for such pensions. (Const. art. 6, sec. 12.) North Carolina—Public Laws 1921, chap. 125, p. 383. Pennsylvania—Laws 1919, p. 461. Rhode Island—General Laws 1923, chap. 324, sec. 2. Tennessee—Shannon's Ann. Code 1926, Supp. sec. 5723*a*—1, 2 and 3. Pensions for judges have been in effect in Tennessee since 1923. Virginia—Code 1919, chap. 123, sec. 3464. Virginia has had a like law in effect since 1914. Wyoming—Laws 1927, chap. 14, p. 13.

Pension statutes have frequently been before this and other courts. It has been held that such acts are not invalid on the ground that the effect thereof is to appropriate public money to private use or to allow extra compensation to public officers for services already performed. (*Helliwell* v. *Sweitzer,* 278 Ill. 248; *People* v. *Abbott,* 274 id. 380; *Firemen's Benevolent Ass'n* v. *Lounsbury,*

21 id. 510; *State* v. *Love,* 131 N. W. (Neb.) 196; Gray's Limitations of Taxing Power and Public Indebtedness, sec. 336; *Exempt Firemen's Benevolent Fund* v. *Roome,* 93 N. Y. 313; *Phœnix Assurance Co.* v. *Fire Department,* 117 Ala. 631.) Pension statutes do not levy a tax for any purpose but direct the raising of funds by proper taxing authorities, as in the case of acts fixing salaries of officials, which the legislature had power to do. (*Helliwell* v. *Sweitzer, supra; Hughes* v. *Traeger,* 264 Ill. 612.) This act does not violate the sections of the State constitution referred to.

Appellants contend that the act does not apply to appellee for the reason that he was not a judge when he arrived at the age of sixty-five years. The argument is that the statute is to be construed as requiring not only twenty-four years of service as a judge, but also, to entitle one to such pension, he must be acting in that capacity when he arrives at the age of sixty-five years. They point out that it is alleged in the answer to the petition in this case and admitted by the demurrer thereto, that appellee ceased his services as judge before arriving at the age of sixty-five, and they say that the act, properly construed, does not apply to him. It is conceded by counsel on both sides of this controversy that pension acts, to be valid, can confer pensions only upon persons who at the time the General Assembly enacted the statute were, or thereafter became, members of the class upon whom the pension is conferred, and that pensions cannot be conferred upon persons who had retired from service prior to the enactment of the Pension act. (*People* v. *Abbott, supra; Mahon* v. *Board of Education,* 171 N. Y. 263; *Mead* v. *Acton,* 139 Mass. 341.) It is not, however, required that the time of service specified succeed the enactment of the Pension statute. As this court pointed out in *People* v. *Abbott, supra,* the act itself indicates that the legislature did not intend that the period of service required by the act there consid-

ered should elapse before the act went into effect, but that it was intended that the act include not only those who became of the class on which the pension was bestowed after the enactment of the statute, but those also who were in such service prior to that time and whose service had not ended at the time the statute was passed. This the legislature has power to do. *People* v. *Abbott, supra,* and cases there cited.

Counsel for appellants cites in support of his contention that this act does not apply to appellee, the case of *Porter* v. *Loehr,* 332 Ill. 353. It was held in that case that a policeman who had retired on a pension was not entitled to the increase of pension authorized by an amendment to the act which was adopted by the General Assembly after he had retired from that service. It was there pointed out that the considerations of public benefit arising from long and continued service, which is encouraged by conferring pensions, have no application to those cases where public officers or employees have retired from service before the pension system was established or increase in pension granted, and that while the retired officer in that case was entitled to continuance of the pension granted by the Pension act as in force when he retired, he was not entitled to the increase provided by the amendment to that act. To like effect are the following cases cited by appellants: *Peabody* v. *Russel,* 301 Ill. 439, *Pecoy* v. *City of Chicago,* 265 id. 78, and *Foreman* v. *People,* 209 id. 567. In this case it is shown by the pleadings that appellee was, and had for more than twenty-four years been, county judge of the appellant county, and that at the date of the enactment of the act here considered he was, and had been for many years, serving in that capacity. He therefore came within the class upon which the pension was conferred at the time the act went into effect. The requirements of eligibility under the act are that the judge shall have served in one or

more of the courts of record of this State for a period aggregating twenty-four years, that he shall have reached the age of sixty-five years, and that he shall have, by resignation or otherwise, ended such service. The language providing for payment of the pension is, that such person, when he reaches the age of sixty-five years and shall by resignation or otherwise have ended such service, shall after such service of twenty-four years, and after reaching the age of sixty-five years, be entitled to be paid the pension. It seems clear from the reading of the act that it was not intended as a requirement of eligibility that the judge remain in service until he was sixty-five years of age, as to so require would in many instances raise the requirement of length of service beyond the period of twenty-four years. Under such a construction, though he had served twenty-four years or more, unless he be actually in service at the time he arrives at the age of sixty-five years he is not entitled to receive a pension, though the purposes of the act, as shown by the decisions of the courts and the public benefits derived from the specified period of service, have been met. It seems clear that if the legislature had intended that such be the construction of the act it would have so stated. In *Stiles* v. *Board of Trustees,* 281 Ill. 636, it is pointed out that the court is required to construe statutes as they exist, and has no power to change them and under the guise of judicial construction either bestow or take away pensions. It was there also held that only the requirements of the statute may be imposed. We are of the opinion that in this case appellee comes within the class of those upon whom it was the intention of the General Assembly to confer this pension.

We come, then, to the questions arising on the pleadings. As we have stated, this is a petition for *mandamus.* The answer of appellants, aside from alleging the invalidity of the act and its inapplicability to appellee, alleges as a defense that there was no money in the treasury either

arising from an appropriation for the purpose or of moneys not otherwise appropriated with which to pay a warrant for the pension of appellee if the same be issued, and it is urged that this is a complete defense in an action seeking the peremptory relief of *mandamus*. Various matters were alleged in the answer and demurrers were filed thereto. The court sustained the specifications of demurrer as to certain allegations but overruled the demurrer to the allegation that there was not, at the time of the filing of the petition nor since, any money in the possession and control of appellants belonging to the county or appropriated by it which might or could be used to pay such a warrant if issued, and that there was no money or funds in possession or control of appellants belonging to the county "not otherwise appropriated." The court having overruled appellee's demurrer to these allegations in the answer there was presented an issue of fact. Notwithstanding this, the court entered judgment for the appellee petitioner on the pleadings and appellants' election to abide their answer, and this without hearing evidence. Therefore, if the truth of appellants' allegation concerning funds affects appellee's right to the writ, it was necessary to the correctness of the court's order that such allegations were shown to be untrue, and evidence should have been heard. Want of funds is a complete answer to a petition for *mandamus* to compel an officer to draw a warrant in a case of this character. *Mandamus* is an extraordinary remedy. Petitioner must show a clear right to the writ. If there be no funds with which to pay the warrant sought, its issuance will not be commanded by writ of *mandamus*. *People* v. *Brown,* 281 Ill. 390; *Board of Supervisors* v. *People,* 222 id. 9.

It was error to award the writ in this cause without hearing evidence on the issue of fact raised. For this error the judgment is reversed and the cause is remanded.

*Reversed and remanded.*