(No. 26604.—

The People *ex rel.* Judges Retirement System of Illinois, Petitioner, *vs.* Warren Wright, State Treasurer, as Treasurer of Judges Retirement System of Illinois, Respondent.

*Opinion filed March 19, 1942.*

MURPHY, C.J., took no part.

ORIGINAL PETITION for *mandamus*.

WALTER BACHRACH, for petitioner.

GEORGE F. BARRETT, Attorney General, (ALBERT E. HALLETT, JR., of counsel,) for respondent.

Per CURIAM : The People of the State of Illinois, *ex rel.* Judges Retirement System of Illinois, upon motion duly allowed by this court, filed its original petition for *mandamus* against Warren Wright, Treasurer of the State of

Illinois, and as Treasurer of petitioner, to accept from the auditor of the State of Illinois a warrant in the sum of $75,519.38, the balance of the appropriation of the General Assembly for payment of judges' pensions under the act of 1919. This sum was tendered respondent as treasurer of petitioner, to be used and expended as provided by an act entitled "An act to provide for the creation, maintenance, and administration of a Judges Retirement System, and to repeal an act herein named," approved July 21, 1941. Respondent refused to accept the deposit, or the duties imposed by said statute, on the ground that to do so would violate the constitution of the State of Illinois. Respondent filed a motion to dismiss, setting out the grounds upon which it is alleged the act in question violates the constitution, which submitted the question as a matter of law.

The statute involved (Laws of 1941, vol. 1, p. 527) provides that the petitioner is in form a trust (sec. 6.1;) its affairs and business is to be conducted by a board of five trustees, of which the State Treasurer is a member, and all of whose duties are prescribed by statute. The purpose of the act is stated to be "a sound and efficient means of providing retirement annuities and other benefits for Judges in the State of Illinois" (sec. 1.2;) and to make available funds payable to persons who have for a certain period of years rendered public services as judges in courts of record of the State, as provided in the act. (Sec. 1.2.)

Under the act all judges of courts of record holding office on or after November 1, 1941, and not participating in any other retirement or pension system, are eligible to receive the benefits after complying with the conditions contained in the act. Whether a judge otherwise qualified becomes entitled to the benefits of the statute depends upon his own volition. He may elect not to be a participant by filing with the relator a written notice to that effect. If he elected to come under the act, and the total length of his service as a judge does not exceed eighteen years, he is

required to contribute two and one-half per cent of the amount of each salary payment received by him. (Sec. 4.2.) These contributions are deducted from the government unit which makes the salary payments to the respective judges, and are transmitted to the petitioner. (Sec. 6.7.) Any participant who has served as such judge for at least twelve years, and who has attained the age of sixty years, and whose services are terminated; or one who has become permanently disabled after at least twelve years of such service, and in consequence is unable to further render judicial service, is entitled to receive annuity payments after retirement occurs. (Sec. 5.1.) When retirement occurs after twelve years of service the amount of the annuity payable is twenty-five per cent of the last annual salary paid such judge, and for each additional month of service, after twelve years and up to eighteen years and before retirement, shall be proportionately increased until retirement after eighteen or more years of service entitles the participant to the maximum annuity of fifty per cent of such salary. (Sec. 5.1.)

The act also contemplates that the State of Illinois will make contributions to the System by means of biennial appropriations of amounts which, together with the contributions of the judges, and the interest earned by investments will meet the costs of administering the System. (Sec. 4.1.) The act also provides as soon as practicable after November 1, 1941, the Auditor of Public Accounts shall draw a warrant for the balance remaining in the appropriation to the Auditor of Public Accounts for judges' pensions to the Judges Retirement System of Illinois, and deposit such warrant with the State Treasurer, as the treasurer of said System. (Sec. 7.7.)

Section 6.5 of the act provides "the treasurer of the State of Illinois shall be *ex-officio* the Treasurer of the Retirement System, and shall have the following specified powers and duties, and is hereby authorized and directed

to: (a) act as official custodian of the cash * * * belonging to the System, and * * * hold such cash * * * subject to the order of the Board; (b) receive from the secretary all items of cash belonging to the System * * * deposit all such amounts in the special trust fund for the account of this System, and notify the Board of all such transactions at least once each month."

The petition further alleges the System has been duly organized, its officers appointed and that it is functioning in the manner provided by statute, but that because of the refusal of respondent to accept said deposit, or to perform and execute his duties as treasurer of such Judges Retirement System, it will be unable to properly administer and carry on its duties as provided by said law.

The above is but a brief resumé of the act necessary to dispose of the contentions raised by respondent's motion to dismiss.

Respondent first argues that in providing that such funds shall be utilized to pay annuity benefits after judicial services have terminated, said act violates the provisions of section 2 of article II of the constitution, which have been construed to prohibit the use of public funds for private purposes, and also the provisions of section 19 of article IV, which provides that the General Assembly shall never authorize extra compensation to any public officer or contractor after services rendered had been terminated.

The System inaugurated by this act provides for the raising of funds in part by contributions, and in part by the State. The effect of sections 19 and 20 of article IV upon similar law was discussed and passed upon in *DeWolf v. Bowley*, 355 Ill. 530, in which it was held that an act in relation to the retiring and pensioning of judges of courts of record in Illinois (Cahill's Stat. 1933, chap. 37, pars. 31 and 32) was not invalid by reason of said provisions of the constitution. The pension laws of most of the States

were reviewed, and the conclusion reached that the primary object of the statute was a furtherance of the public interest as an inducement to continued public service, and therefore did not constitute a donation or gratuity.

The same principle is sustained in *Raines* v. *Board of Trustees of Teachers' Pension Fund,* 365 Ill. 610, wherein it is held that a law establishing a teachers' retirement fund, made up in part of voluntary contributions by the teachers and in part from State funds, did not violate these sections of the constitution. This case was followed by that of *Ridgley* v. *Board of Trustees,* 371 Ill. 409, in which a statute was upheld which authorized a teacher, who had not come within the provisions of the original State Teachers' Pension and Retirement Fund act, be permitted by the payment of a lump sum to accept the benefits thereof. The distinction between a pension and an annuity fund is clearly pointed out in the *Raines case,* in which it is said: "A pension is in the nature of a bounty springing from the appreciation and graciousness of the sovereign, and may be given, withheld, distributed or recalled at its pleasure. (*People ex rel. Donovan* v. *Retirement Board,* 326 Ill. 579; *Porter* v. *Loehr,* 332 id. 353; *Pecoy* v. *City of Chicago,* 265 id. 78.)" Where, however, the contributions are voluntary a different case is presented, as is also pointed out in the *Raines case:* "In the other case it is wholly a matter of choice with him. He may elect to come within the terms of the act and receive its benefits, or he may forego that privilege at his option, with no other effect than to deprive him of participating in the fund. If he does not elect to contribute, he receives and retains the full amount of his salary or wages. If he elects to contribute, the amounts are deducted by his direction. The effect is the same as if his full salary were paid to him and after it became his private means he in turn contributed to the retirement fund. In such case there is neither reason nor authority to hold

that the fund remains public money in which he has no right or interest." These cases are determinative of this point.

The case of *Chicago Motor Club* v. *Kinney*, 329 Ill. 120, involved a statute authorizing refund of a tax to persons who used motor fuel, upon which the license tax had been paid, without regard to whether the user had been the person who paid the tax, and which was construed as violating the constitution in making it possible to divert public funds to a private use. The case of *Porter* v. *Loehr*, 332 Ill. 353, does not apply, because the recipient of a policeman's pension had been retired, and the statute involved attempted to authorize payment of larger benefits as an extra allowance for past services. The obligation which the performance of those services imposed upon the public had been performed, which alone made the act subject to condemnation, as pointed out in *Raines* v. *Board of Trustees, supra.*

The cases of *Hagler* v. *Small*, 307 Ill. 460, and *People ex rel. McDavid* v. *Barrett*, 370 id. 478, support the petitioner more than the respondent. In the *Hagler case* an act authorizing the payment of a bonus to soldiers who had served in the war, was deemed to be for a public purpose and contained elements of public benefits, concerning which the legislature may use discretion in exercising its powers of taxation. The *Barrett case* was one which, on like grounds, upheld an act appropriating to the widows of deceased circuit judges an amount equal to their salaries from the date of death until the selection of their successors, as being for a public as distinguished from a private purpose. So, also, *People ex rel. Douglas* v. *Barrett*, 370 Ill. 464, for like reasons held that appropriation for the family of a member of the legislature, who had served several terms and had died after being elected, but prior to taking his oath of office, did not violate section 19 of

article IV of the constitution, because it came within a public as distinguished from a private purpose. We are of the opinion the Judges Retirement act does not violate the constitution, as contended by respondent's first point.

It is urged the act violates the provisions of sections 7, 16, and 25 of article VI of the constitution, providing for salaries of judges of the Supreme court, circuit court and superior court, and which prohibit salaries of such judges from being increased or diminished during their terms of office; and also in violation of section 11, article IX, which prohibits the compensation of any officer who is elected or appointed for a definite term, from being increased or decreased during such term. The same point was made in *DeWolf* v. *Bowley, supra,* and overruled without comment.

Section 3.2 of the act provides that each person who is an eligible judge shall come under the provisions of the act upon November 1, 1941, "unless prior to such date such judge has filed with the Board a written notice of election not to participate in this System." Section 7.1 provides each participating judge shall by virtue of the payments of the contributions required by the act receive a vested interest in the refunds, and in consideration of such vested interest shall have been deemed to have agreed to and authorized deductions from the payment of his salary.

Respondent makes the point that provision for a retirement annuity from an economic standpoint amounts to an increase of compensation. This point is not valid, because the constitution only prohibits an increase during the term of office, and the beneficiary does not receive anything during such term. He also asserts it amounts to a decrease because they must contribute a portion of their salary to be entitled to the benefits of the act. This objection is not sound because the law does not require them to contribute, but gives them an option or election, and if they do contribute, a contract relation is established, which, after their

retirement, entitles them to an annuity. There is no compulsion, but on the contrary it depends upon the voluntary contributions of those affected by the legislation.

Respondent further asserts it amounts to compulsion or duress, because if a participant does not come under the act he loses his right to a pension. The fallacy of this, however, is that no one is entitled to a gratuity in the form of a pension, for as we said in *Raines* v. *Board of Trustees, supra,* a pension is in the nature of a bounty and may be given, withheld, distributed or recalled at pleasure. And on the other hand it comes clearly within the language of the same case wherein we said the effect is the same as if the full salary were paid to him, and after it became his private means he in turn contributes to the retirement fund.

Substantially the same argument is made under point 3, in which it is asserted the act violates article III of the constitution, prohibiting any of the three departments of government from exercising powers properly belonging to the others, upon the assumption that the voluntary contributions authorized by the act amount to a tax upon the property of the judges. The answer to this is that pension statutes do not levy a tax for any purpose, whether paid by funds of the State or from funds contributed by the participants. Such a statute merely directs the raising of funds by proper taxing authorities, as in the case of fixing of salaries of officials within the power of the legislature. *DeWolf* v. *Bowley, supra; Helliwell* v. *Sweitzer,* 278 Ill. 248; *Hughes* v. *Traeger,* 264 id. 612.

It is also alleged the statute constitutes special legislation in violation of section 22 of article IV, in that there is a discrimination in the amount of payments required by judges who have had a long period of service as contrasted with those who have served a shorter period of time. A similar question was before the court in *People ex rel. Kroner* v. *Abbott,* 274 Ill. 380, where the police pension

fund act made eligible beneficiaries, persons who, at the time of the taking effect of the act, were members of a police force, or who thereafter became members of such police force, and had served for a period of twenty years or more. It was held that it was no objection to its validity that some of the policemen had not served twenty years after the act became effective, since the act was for the public purpose of inducing faithful and courageous service, whether rendered before or after the passage of the statute. This is in exact accord with the purpose annunciated in the act of effecting economy and efficiency in public service, without handicap or prejudice to judges who have become aged or otherwise incapacitated. Nor can it well be said that section 22 of article IV has application, because the subject matter of this act does not come within local or special laws prohibited therein. *People* v. *Wilcox,* 237 Ill. 421; *People ex rel. Moshier* v. *City of Springfield,* 370 id. 541.

The classification of persons or objects of legislative regulation is not open to constitutional objection if it be not arbitrary, but is based upon some substantial difference bearing proper relation to the classification. (*Lueth* v. *Goodknecht,* 345 Ill. 197; *Bryan* v. *City of Chicago,* 371 id. 64.) It is a matter of common knowledge that in the State of Illinois among the great number of judges affected by the statute some of them have served but a short period of time, and others for a period entitling them to a pension under the Judges' Pension law superseded by this act. The provisions of the act are optional, and the funds provided in part by those benefited, and in part by the State. The scheme is changed from one of a bounty, which may be recalled at will, to a contract basis, which gives every one affected a contract right. (*Raines* v. *Board of Trustees, supra.*) The fact that all of the judges affected thereby will not be upon an equal basis as to contribution imme-

diately, but will be so after the requisite number of years have passed, does not make the legislation either special, or local, or discriminatory, since those adversely affected join the System voluntarily, and ultimately the benefits and contributions will be equal. "Laws will not be regarded as special or class legislation merely because they affect one class and not another, provided they affect all members of the same class alike. * * * A classification will be sustained if it is reasonably adapted to secure the purpose for which it is intended and not purely arbitrary." . *Stearns* v. *City of Chicago,* 368 Ill. 112; *People* v. *Lyons,* 374 id. 557.

In fixing the amount of contributions by each judge and by providing that it be voluntary, the legislature doubtless weighed long service and prospective retirement of numbers of the judges, which in turn would more speedily stabilize the fund and round out the retirement plan, which was difficult to put into immediate operation upon a basis of absolute equality. However, it is plain that the ultimate purpose and operation of the act will be uniform. A mere inequality, not arbitrary in character, during a temporary period of transition caused by varying years of service of the beneficiaries, does not make the classification unreasonable. *State* v. *Levitan,* 181 Wis. 326.

In point 5 respondent urges the trustees of the Retirement System are vested with legislative power, contrary to the constitution. This is urged because the act permits the trustees to allow refunds to participants upon withdrawal from the System without specifying the conditions precedent, or the terms, or occasions upon which refunds shall be granted. Refunds are mentioned in four different places in the act, but it contains no specific provision defining the amount of refunds, or when they may be demanded. Section 3.2 provides a judge may terminate an existing participation by accepting a refund of his contribution; section 4.1 requires the State to make contributions to the System sufficient "to maintain a surplus for refunds

to all participants;" section 6.2-b requires the Retirement Board to pass upon refunds, and to authorize the granting of refunds; and section 7.1 recites that the payment of the monthly sums entitles each judge to a vested interest in the refunds provided in section 6.2-b, which is deemed a consideration for deductions from salary of the contributions payable by the judges to the Retirement System.

From the foregoing it appears something is omitted from the act. Article 2 sets out definitions of substantially every important term in the act, except refunds. No rules or regulations upon this subject are found. The amount of the refund is not specified because it is not clear whether a judge might receive back all he had paid in, or what he had paid in plus earnings, or whether it should be the contributions less administration expenses. And as a matter of fact there is no direct provision by the legislature authorizing refunds, except such as may be inferred from the authorization to the Retirement Board of granting refunds. This being the case the statute cannot be made effective in this regard, except by the adoption of rules and regulations by the Retirement Board, which would have the effect of legislating upon a subject matter which the General Assembly had omitted. It is well settled that an administrative board cannot be vested with authority to legislate. (*People ex rel. Moore* v. *Beekman,* 347 Ill. 92; *Chicagoland Agencies, Inc.* v. *Palmer,* 364 id. 13.) In view of the foregoing the provisions of the act with respect to refunds must be held invalid.

Our determination in this respect does not affect the validity of the other provisions of the law. Section 7.6 provides "if any section, paragraph, sentence, or clause of this act is, regardless of cause, held invalid or unconstitutional, the remaining sections, paragraphs, sentences and clauses shall continue in force and effect, and shall be construed thereafter as being the entire provisions of this act." Examination of the legislative journals discloses that as

the act was first introduced it contained a specific provision for refunds, but was amended by striking out this provision, and by apparent inadvertence other provisions regarding the refunds were not stricken. The remaining portion of this statute is complete and effective if no consideration is given to the references to a refund, and hence they may be disregarded as surplusage. The provisions of the statute with reference to refund are severable from the balance of the act, and the remaining provisions, being complete and capable of execution, will be enforced, even though the parts referring to the refunds are unenforcible. *Weksler* v. *Collins,* 317 Ill. 132; *People ex rel. Patterson* v. *Long,* 297 id. 194; *Bryan* v. *City of Chicago,* 371 id. 64.

It is finally contended that the act violates that part of the constitution which prohibits the amendment of any act by reference to its title only. The statute under consideration is a complete act within itself, and requires no reference to any other law. The constitutional provision invoked is discussed in *People ex rel. Gramlich* v. *City of Peoria,* 374 Ill. 313, where we said: "If the amendatory act is complete in itself, constituting an entire act of legislation on the subject with which it purports to deal, it is to be deemed good and is not subject to the constitutional provision notwithstanding it may repeal by implication or modify the provisions of the prior law. If the amendatory act merely amends the old law by intermingling new and different provisions or by adding new provisions so as to create out of the old act and the new, when taken together, a complete act and leaves it in such condition that the old act must be read with the new to determine its provisions and meaning, then the act is amendatory of the old law, and the constitutional provision requires that the law so amended be inserted at length in the new act. *Bishop* v. *Chicago Railways Co.* 303 Ill. 273; *Board of Education* v. *Haworth,* 274 id. 538."

Section 7.7 of the act provides "this act shall repeal and supersede as of *November 1, 1941,* 'an act in relation to the retirement and pensioning of judges of courts of record in Illinois,' approved June 28, 1919." It is obvious that an act new and complete within itself, which supersedes and repeals a former act, cannot be subject to such constitutional objection. It is said, however, that the statute also amended section 9(3) of an act in relation to State finances (Ill. Rev. Stat. 1941, chap. 127, par. 145) which provides that in substance amounts paid from an appropriation for personal services of an officer or employee of the State shall be considered as full payment for all services rendered, because it provides (sec. 7.1) the payments by the State or municipality shall not be considered a violation of this section of the State Finance act. The legislature intended to make it clear that the annuities to be paid under the act were not to an officer or employee of the State, and that if and when paid out, were by virtue of a voluntary contract arrangement, in accordance with the provisions of the act. It could have no other purpose, and does not in any way change or amend the State Finance act.

It is contended the act constitutes an amendment to the act (Laws of 1941, vol. 1, p. 230) appropriating for the pay of members of the next General Assembly, and certain officers of the State government, because section 6.6 requires the Auditor of Public Accounts, in drawing salary or pay roll vouchers, to issue them for an amount less the contribution the judge makes to the Retirement System. It is contended this amends the appropriation. Nothing could be further from the fact. The appropriation to the amount thereof for each officer and employee remains constant, but to put the System in operation, when a judge has exercised his option to contribute and has authorized the Auditor to make deductions from the amount which would otherwise be paid to him, it is but a new duty imposed upon the officer to

carry out a new and complete act. It does not involve an appropriation in any sense. It but authorizes the Auditor to pay the full salary by two vouchers, one of which by order on file is delivered to the treasurer of the System, and does not alter the amount or purpose of the appropriation for salaries. It is proper to so construe it, because when two acts are passed at the same session of the legislature they are not to be construed as inconsistent if it is possible to construe them otherwise. (*People ex rel. Martin* v. *Village of Oak Park,* 372 Ill. 488; *People ex rel. English* v. *Atchison, Topeka and Santa Fe Railway Co.* 370 id. 420.) So construed nothing more is provided by section 6.6 than authority to make the payments to the respective judges in two warrants instead of one, which has no relation to the Appropriation act.

We are of the opinion the Judges Retirement System act, except the provisions with respect to refunds, is not invalid, and that the act is valid in all respects except the provision granting refunds. The rule is well settled that *mandamus* in this court is an appropriate remedy for the petitioner to invoke. (*People ex rel. Heydenreich* v. *Lyons,* 374 Ill. 557; *Fergus* v. *Marks,* 321 id. 510.) There was a clear duty imposed upon respondent to accept the warrant tendered by the Auditor of Public Accounts, and to receive it as Treasurer of the Judges Retirement System of Illinois, to be applied for the purposes therein provided.

The motion to dismiss is overruled and the writ of *mandamus* prayed in the petition is awarded.

*Writ awarded.*

Mr. CHIEF JUSTICE MURPHY took no part in this decision.