WILLIAM C. CAMPBELL

*v.*

JOHN H. KELLY, *et al.*

(No. 13350)

Submitted September 5, 1973.   Decided February 5, 1974.

454

*Rolla D. Campbell* for relator.

*Chauncey H. Browning, Jr.,* Attorney General, *John L. McClaugherty,* Special Assistant Attorney General, for respondents.

NEELY, JUSTICE:

This proceeding in mandamus was brought by William C. Campbell in his personal capacity as a citizen, voter, and taxpayer of the State of West Virginia against the trustees of the West Virginia Public Employees Retirement System and others concerned with the administration of the Public Employees Retirement System to require cessation of further payments to retired members of the West Virginia Legislature whose pensions are based on legislative service before 1971 and to compel the recovery on behalf of the State of retirement pension benefits which have already been paid. Although the relator has standing to bring this action as a citizen and taxpayer, *Delardas v. County Court of Monongalia County,* 155 W.Va. 776, 186 S.E.2d 847 (1972), he is also the Chairman of the Citizens Legislative Compensation Commission, which under Article VI, Section 33 of the *Constitution of West Virginia,* as amended in 1970, has the responsibility for establishing the maximum compensation for legislators.

The legislative pension system under attack was first established in 1961 when pension plans were inaugurated for various other classes of personnel in the employ of the State. Chapter 5, Article 10 of the *Code of West Virginia,* 1931, as amended, established the Public

Employees Retirement System and provided that members of the Legislature could participate on the same basis as other State employees. Although there were intermittent amendments to the Public Employees Retirement Act, the first amendment which affected the Legislature occurred in 1967 when *Code,* 5-10-2 was changed to define "final average salary" for legislators as "their actual compensation serving as a member of the Legislature multiplied by four." Chapter 158, *Acts of the Legislature,* Regular Session, 1967. Under that act the salary upon which a legislator's pension would be based became his constitutionally established salary of $1500 per year multiplied by four, for a base salary for retirement credit purposes of $6000 per year. While legislators were to receive a pension which would be four times as much as any other state employee with an equivalent salary, legislators were required to pay four times the normal contribution into the fund.

*Code,* 5-10-2 was again amended in 1968 to provide, among other things, that a legislator's pension base would be computed by taking the constitutionally established salary of $1500 per year and multiplying by eight. Chapter 43, *Acts of the Legislature,* Regular Session, 1968. Finally, *Code,* 5-10-2 was amended in 1970 to provide that legislators could also include compensation received from other participating public employers, including the State of West Virginia, in computing their average salary for retirement purposes, and that legislators who had already retired would be entitled to the benefits of the changes made by that amendment. Chapter 63, *Acts of the Legislature,* Regular Session, 1970.

In November 1970, the voters of West Virginia amended Article VI, Section 33 of the *Constitution of the State of West Virginia* which had previously established a $1500 per year maximum salary for legislators, and created the Citizens Legislative Compensation Commission which was authorized to recommend to the Legislature at four year intervals the maximum compensation to be paid to

legislators. Pursuant to this constitutional amendment, the Governor appointed the seven members of the Commission, and on January 26, 1971 the Commission adopted a resolution recommending an annual salary of $3300 per year and authorizing the Legislature to provide for specific food and lodging allowances and certain other expenses. Under the Commission's recommendation, legislators could become members of the Public Employees Retirement System on the same basis as any other officer or employee of the State.

After receiving the resolution of the Commission, the Legislature amended *Code*, 5-10-2 to provide that a member of the Legislature who served before January 1971 could have his "final average salary" computed either on the basis of an annual salary of $1500 augmented by a multiple of eight, or on the basis of the average of actual salary for three consecutive years of credited service, whichever were higher. Chapter 127, *Acts of the Legislature*, Regular Session, 1971. The annuity was continued at 2% of final average salary multiplied by the years of credited service; however, the annuity of any legislator, or of any former legislator could be increased from time to time during the period of retirement when and if the legislative compensation paid under Chapter 4, Article 2 (a), Section 2 of the *Code of West Virginia*, 1931, as amended, to an active member of the Legislature were increased to the point where a higher annuity would be payable to a retirant if he were retiring as of the effective date of the latest increase in such legislative compensation. Finally the 1971 amendment provided that the contribution of any member of the system who served as a legislator after the effective date of the 1971 constitutional amendment, and with respect to whom "final average salary" would be computed on the basis of any year in which there were a multiple of eight in effect, should contribute on the basis of his legislative compensation the sum of $540 each additional year he participates in the system as a member of the Legislature.

The relator challenges the constitutional validity of the legislative pension program between 1961 and 1971 as well as certain provisions in the pension program as enacted in 1971 upon the following grounds:

(1) Article VI, Section 33 of the *Constitution of the State of West Virginia* before the amendment ratified on November 3, 1970, and effective in 1971, prohibited pension benefits to legislators from 1961 to 1971.

(2) The provisions of Chapter 127, *Acts of the Legislature,* Regular Session, 1971 which accord benefits to legislators based on service after 1971 which are greater than those accorded other public employees are in excess of the authority conferred on the Legislature by the Resolution of the Citizens Legislative Compensation Commission and, therefore void under Article VI, Section 33, as amended in 1971.

(3) Membership in the retirement system creates a contract in which a member of the Legislature is interested in contravention of Article VI, Section 15 of the *Constitution.*

(4) Payment to any legislator of retirement benefits over those in effect at the beginning of the term at which he was elected is void under Article VI, Section 38 of the Constitution.

(5) The pre-1971 Acts granting retirement benefits to legislators fail to include special mention of those benefits in the titles to the bills in violation of Article VI, Section 30 of the Constitution; and

(6) The inclusion of special benefits to legislators based on service between 1961 and 1971 beyond those accorded other members of the retirement system denies equal protection of the laws.

It has been argued by relator that legislators serve in a fiduciary capacity and that the pension legislation evinces self-serving behavior which violates strict standards applicable to fiduciaries which prohibit self-

dealing. However, this Court is not entitled to pass on the wisdom or propriety of the pension legislation. The Court is limited by its constitutional position exclusively to the consideration of the constitutional validity of the statute challenged.

The thrust of relator's case is derived from his interpretation of the original Article VI, Section 33 of the *Constitution of the State of West Virginia,* which provided before the 1971 amendment that:

> "Each member of the legislature shall receive for his services the sum of one thousand five hundred dollars a year, and expenses for one round trip in connection with any session. . . . *No other allowance or emolument than that by this section provided shall directly or indirectly be made or paid to the members of either house for postage, stationery, newspapers, or any other purpose whatever. . . ."* (Emphasis supplied.)

The relator's position is that Section 33, in this original form, completely prohibited the Legislature from enacting a pension plan for their benefit because a pension plan constitutes an "allowance" or "emolument" as proscribed by Section 33. The respondents, however, argue that the language "no other allowance or emolument" relates only to salary, expenses and other immediate allowances and does not prohibit pensions.

By the amendment of Section 33 on November 3, 1970 an entirely new concept in legislative compensation was instituted in this State. In pertinent part, the revised Section 33, provides:

> "Members of the legislature shall receive such compensation in connection with the performance of their respective duties as members of the legislature and such allowances for travel and other expenses in connection therewith as shall be (1) established in a resolution submitted to the legislature by the citizens legislative compensation commission hereinafter created, and (2) thereafter enacted into general law by the legislature at a regular session thereof, . . .

"The citizens legislative compensation commission is hereby created. . . .

"The commission shall . . . submit by resolution to the legislature its determination of compensation and expense allowances . . . ."

The respondents argue that as the word "pension" is not used in the new Section 33, the revised constitutional provision, like its predecessor, relates only to salaries and expenses. As the entire question of pensions is before the Court, the respondents encourage, through their briefs, a binding judicial interpretation of this provision of the Constitution in order to resolve ambiguity and determine whether pensions are contemplated within its provisions. While the relator forcefully argues that Section 33 before its amendment absolutely prohibited legislative pensions, he concedes that the new Section 33 would permit such pensions if they were recommended by the Legislative Compensation Commission; however, relator maintains that the 1971 attempt at pension legislation was void because the Legislature failed to follow the recommendations of the Commission.

I

When courts consider any area of the law involving financial transactions (the most obvious of which is the area of commercial law) substantial weight must be given to the salutary effect which is generated by stability. In those areas of the law which govern long-term relationships between parties, regardless of whether one of the parties be the government, it is essential that the law be predictable and that courts act in a consistent way in order to permit the rational organization of society. Accordingly, in an area of the law such as the one at hand, involving long-term rights or expectancies which many industrious persons in good faith have believed to have accrued over a period of thirteen years, great respect should be given to precedent developed in other jurisdictions, unless such precedent is clearly in conflict with the obvious meaning of the *West Virginia Constitution.* This

Court is mindful that the only guidance available for determining the constitutional validity of legislative pensions at the time the provisions under challenge were enacted was the body of general law developed in jurisdictions outside of West Virginia.

The proceedings of the West Virginia Constitutional Convention have been thoroughly reviewed and are silent concerning whether the framers of the Constitution intended to exclude legislative pensions by use of the terms "allowance" or "emolument." *West Virginia Constitutional Convention Journal*, 1872. Therefore, we are required to determine the appropriate interpretation of Section 33 by a bare reading of its provisions, aided by a knowledge of social conditions in 1872.

In the late Nineteenth Century when our Constitution was adopted, there were no state pension plans in this country and private pension plans were very rare. The framers of our Constitution lived at a time when most property rights consisted of real property or tangible personal property in the form of stocks or bonds. Massive corporate enterprise as we know it was yet unborn, and a far greater proportion of the population were self-employed, primarily in agriculture, than are today. In West Virginia, in 1870, sixty-four percent of the adult labor force was engaged in agriculture, (Ninth Census, Vol. I, *The Statistics of the Population of the United States,* June 1, 1870, Washington, D.C.; G.P.O., 1872, p. 675) while in 1970, only two percent of the adult labor force were engaged in agriculture. (U.S. Department of Commerce, Bureau of Census, Social and Economic Statistics Administration. *1970 Census of Population, Characteristics of the Population Pt. 50, West Virginia,* p. 171.)

Although our Nineteenth Century Constitution has survived into the latter third of the Twentieth Century, circumstances have dramatically changed, particularly with regard to property rights. For the average working person, the most valuable property rights in late

Twentieth Century society consist of social security benefits, insurance contracts, union welfare fund benefits, and private and governmental pensions. In the days of our forefathers it was possible for lawyers and farmers to come to Charleston for two months in the winter at a surprisingly low opportunity cost, as there was little which could be done in an agricultural community during the winter, and poor transportation along dirt roads made impassible by mud and snow, substantially curtailed the practice of law. Accordingly, legislative service did not necessarily foreclose other opportunities for providing security during the retirement years. All those conditions have changed dramatically, and these changed conditions could not have been contemplated by the framers of our *Constitution*. As a result of the need of all heads of households to provide for their own and their dependents' old age through resort to pension rights (as opposed to the traditional accumulation of real property or tangible personal property) many courts have noticed that some type of pension program for all persons actively involved in government is essential to attract to state service persons of high ability. In the case of *State ex rel. Board of Governors of West Virginia University v. Sims,* 133 W.Va. 239, 55 S.E.2d 505 (1949) this Court decided that there is no constitutional prohibition against government pensions in West Virginia, and that quite to the contrary, pensions are to be looked upon favorably and to be encouraged. In the *Sims* case this Court observed that pension programs serve a legitimate government function, and that the public benefit outweighs any ancillary private benefit. In the case of *Spencer v. Yerace,* 155 W.Va. 54, 180 S.E.2d 868 (1971) at page 872, this Court stated that the purpose of a pension plan is to "promote efficiency, to encourage continuity of service, and to protect the employee and his family." The Court said that a firemen's pension plan served a public purpose in that it contributed ". . . in securing and retaining the services of the most faithful and efficient class of men for service. . . ."

This Court is persuaded that in the absence of evidence that it was the intent of the framers of our *Constitution* by Section 33 to prohibit pension plans under conditions as they have changed in the last century, our *Constitution* should be interpreted in conformity with the great weight of precedent from other jurisdictions interpreting similar provisions of other state constitutions. All the modern decisions interpreting the power of legislators to enact pension programs hold that constitutional limitations on "allowances" or "emoluments" do not apply to pension programs. For example, in the case of *Bulgo v. Enomoto*, 50 Hawaii 61, 430 P.2d 327, (1967) the Supreme Court of Hawaii squarely decided this point and said among other things that ". . . emolument implies actual pecuniary gain rather than some imponderable and contingent benefit." In *State ex rel. Todd v. Reeves*, 196 Wash. 145, 82 P.2d 173 (1938) the Supreme Court of Washington interpreted a provision of that state's constitution similar to ours containing the word "emolument" as not proscribing pension benefits. Article 2, Section 13 of the *Constitution of the State of Washington* said:

> "No member of the legislature, during the term for which he is elected, shall be appointed or elected to any civil office in the state, which shall have been created, or the emoluments of which shall have been increased, during the term for which he is elected."

The respondent in *Reeves* had been a member of the Washington legislature when that body created a judicial retirement system, and afterwards the respondent was elected to judicial office. The relator attacked respondent's right to hold judicial office on the grounds that the emoluments of that office had been increased during respondent's term in the Legislature and that under the Constitution he was ineligible to serve. The Washington Court rejected that argument on the grounds that "While the provision for retirement makes the office more attractive, the fact remains that no emolument . . . could

attach . . . ." because of the contingent nature of the pension.

In the case of *State ex rel. Lyons v. Guy,* 107 N.W.2d 211 (D.C.N.D. 1961) a *quo warranto* proceeding was instituted to determine the respondent's right to be Governor of North Dakota. The respondent governor had been a member of the North Dakota Legislature when various appropriations had been made for the governor's office including $4,500 for a car, $1,500 for general expenses, and $600 increase in remuneration for the governor upon which social security assessments were levied, plus an increase of 1/2% of the social security tax paid by the state on behalf of the governor. The North Dakota court held that none of these items was salary or an emolument within the meaning of the constitutional provision.

This Court reached a similar conclusion in *State ex rel. Patteson v. Sims,* 136 W.Va. 106, 65 S.E.2d 730 (1951) where the Court held that social security taxes paid by the State on behalf of State employees were not an increase in compensation or salary as prohibited by Article VI, Section 38 of the *Constitution of the State of West Virginia.* This Court said at page 119 of the West Virginia Reports:

> "[Contributions of public funds to provide old age retirement benefits] are not a part of, but exist separately and apart from, the salary of each of the petitioners as a public officer of this State; and that the collection and the payment of these taxes do not increase or diminish such salary within the meaning of Article VI, Section 38 of the Constitution of this State."

Although the *Patteson* case interpreted Article VI, Section 38, which will be discussed in this opinion in detail *infra, Patteson* stands for the proposition that pensions are not traditional "salary," and by extension not either an "allowance" or "emolument," but rather are things *sui generis* which were not contemplated within the constitutional structure established in 1872.

Although this Court has never interpreted the words "emolument" or "allowance" in Article VI, Section 33, of the *Constitution* before the 1971 amendment, the cases in this jurisdiction concerning other pension programs funded by State government demonstrate the consistent policy of this Court to construe other provisions of the State Constitution containing limitations upon additional compensation as not applying to pension programs. In the case of *University v. Sims, supra,* this Court interpreted Article VI, Section 38 which prohibited "extra compensation" as not forbidding the Legislature to appropriate funds to the Board of Governors of West Virginia University for the payment of retirement benefits to teachers. The Court said at 133 W.Va. 239 at 244, 55 S.E.2d 505 at 508:

> "In the able brief filed by counsel for relator, the power of the Legislature to set up a retirement system for employees of the State, or any subdivision thereof, including teachers, is stressed; and it is earnestly contended that nothing in Section 38 of Article VI of our Constitution prohibits the Legislature from enacting legislation to effect such purpose. We fully agree with this contention. We do not believe that such legislation involves the creation of a debt inhibited by Section 4 of Article X of the Constitution; nor that it is in contravention of the provisions of Section 38 of Article VI of our Constitution which provides that no extra compensation shall be allowed to any public officer, agent, servant or contractor, after the services shall have been rendered or the contract made. While custom does not create power, it does furnish the basis for legislative action, where such action is not prohibited by the Constitution. The section last referred to above does not inhibit the Legislature from enacting such legislation; and the Legislature, under the broad powers vested in it under the general theory of legislative power, is permitted to enact such legislation, where the payments authorized can be said to be for a public purpose as distinguished from a personal gratuity."

In *Nelson v. City of Los Angeles,* 21 Cal.App. 3d 916, 98 Cal. Reptr. 892 (1971) the City of Los Angeles increased the pension of policemen who had already retired and were receiving pension benefits. It was argued that the increased benefits were unconstitutional under a California Constitutional provision similar to our own Article VI, Section 38. The California provision said:

> "A local government body may not grant extra compensation or extra allowance to a public officer, public employee, or contractor after service has been rendered or a contract has been entered into and performed in whole or in part. . . ."

The Supreme Court of California held that the increase of benefits was not extra compensation or an extra allowance as contemplated by the Constitution and said:

> "The law is well settled that additional benefits may constitutionally be provided for members of the retirement system who have acquired a pensionable status." [Citations omitted]

> "Inherent in the statement of the settled principle is the rationale that an increase in pension benefits . . . is paid as the result of rights incident to that status and not as a matter of increased compensation or allowance."

See also *People ex rel. Judges' Retirement System v. Wright,* 379 Ill. 328, 40 N.E.2d 719 (1942) where retirement benefits were held not to comprise extra compensation.

Clearly, the construction given the type of constitutional prohibition contained in Section 33 in its original form by a majority of American courts is that the provision does not apply to pensions. Therefore, this Court holds that pensions were not contemplated at the time of the original ratification of the *Constitution of the State of West Virginia* and, therefore, the Legislature had the same right to establish pensions for themselves that they had to establish pensions for other persons in the employ of the State.

## II

This Court's holding with regard to the proper interpretation of the unamended Section 33 of the *Constitution* differs from the Court's interpretation of that section after amendment. Although the words "emolument" and "allowance" were written in the original Section 33 at a time when the framers did not contemplate pension programs, when the amendment to Section 33 was passed in 1970 by the voters, both the drafters and electorate contemplated pension programs within the modern and broadened word "compensation." We therefore hold that Article VI, Section 33, as amended in 1971, empowers the Legislative Compensation Commission to control legislators' "compensation," which includes pension recommendations. While in 1872 public pension programs were unknown, in 1970 public pension programs were evident at every level of government, in West Virginia, and the subject of legislative pensions had evoked substantial public controversy. Two years before the constitutional amendment in question, our Legislature had enacted the controversial multiplier formula, and there is persuasive evidence that the amendment to Article VI, Section 33 of the *Constitution* was, at least in part, propelled by that controversy. For example, the resolution of the Citizens' Advisory Committee on the Legislature of West Virginia, created by Senate Concurrent Resolution No. 12, *Acts of the Legislature*, Regular Session, 1967, said in part:

> ". . . '[A]ny upward salary adjustments should be conditioned upon a downward adjustment in the legislative retirement formula.' In fact, we recommend that legislators be entitled hereafter to participate in the public employees retirement system on the same basis as any state officer or employee. The intended effect will be for the Member's actual salary. . . to be multiplied by one in the formula for contributions into the Fund, and, in the benefit formula, for his salary to be construed as actual salary for all years of participation in the system beginning with 1971 . . . . "

Therefore, we hold that legislative pensions after 1971 are governed by Article VI, Section 33, as amended in 1971 and that all pensions must be in conformity with the recommendations of the Commission.

## III

As this Court has concluded that pre-1971 legislative pensions are valid and that post-1971 legislative pensions are subject to regulation by the Legislative Compensation Commission pursuant to amended Article VI, Section 33, it remains to be determined whether the 1971 pension statute, Chapter 127, *Acts of the Legislature,* Regular Session, 1971, is valid. Article VI, Section 33, as amended, is prospective only, 16 C.J.S., *Constitutional Law,* pages 121-122; *Berry v. Fox,* 114 W.Va. 513, 172 S.E. 896 (1934). Section 33, as amended, contains the following language:

> "Until the first such general law becomes effective, the provisions of this section in effect immediately prior to the ratification of this amendment shall continue to govern."

The relator argues that the provisions of Chapter 127 are invalid under Section 33 before amendment for the reasons previously discussed and, alternatively, that if Chapter 127 be construed as an act implementing the recommendations of the Legislative Compensation Commission and, therefore, the necessary legislative action to make effective the amendment to Section 33, Chapter 127 is invalid because by providing pensions based on service from 1961 to 1971 it fails to follow the recommendations of the Legislative Compensation Commission. We disagree with both of relator's contentions, and hold that except with regard to inequalities in benefits between legislators and other public employees based on service after 1971 as discussed *infra,* Chapter 127 is valid under both Section 33 as it stood before the 1971 amendment, and under the amended Section 33.

As we have held that Section 33 before the 1971 amendment did not contemplate a prohibition on pensions, the Legislature was entitled to enact a pension program

for itself in the same way that it is entitled to enact pension programs for other classifications of State employees. Chapter 127 merely established the formula for the computation of pension benefits after 1971 under circumstances in which a legislator had accumulated both pre-1971 and post-1971 legislative service. In the alternative, if we were to assume that Chapter 127 implemented the recommendations of the Legislative Compensation Commission, it is obvious that some "grandfather" clause was contemplated by the Commission to assure that legislators with pre-1971 service did not lose the benefits of their accumulated service by virtue of serving in the Legislature after 1971. Any legislative pension passed in 1971 which did not accord to legislators the full benefit of the pre-1971 multiple, would have penalized members of the Legislature who wished to serve after 1971, as such service would reduce their basis for pension computation. To construe the resolution of the Compensation Commission as limiting pensions based on pre-1971 service because of post-1971 service would frustrate the public purpose of encouraging extended service among competent government personnel. Added strength is given this analysis by the public explanatory statement of Chairman William C. Campbell, the relator in this case, who expressly indicated the intent of the Commission to provide for a limited "grandfather" clause. Mr. Campbell said:

> "In fact, we recommend that legislators be entitled hereafter to participate in the Public Employees Retirement System on the same basis as any state officer or employee. The intended effect will be for the member's actual salary (and additional per diem compensation, but not including any expense allowance or reimbursement of expenses) to be multiplied by one (1) in the formula for contributions into the fund, and, in the benefit formula, for his salary to be construed as actual salary (times one) for all years of participation in the system beginning with 1971; *but without altering, in the benefit formula, any multiplier that by definition may*

*have applied to legislative salary received prior to 1971. So we have provided for a limited 'grandfather clause'."* [Emphasis supplied.] *Journal of the Senate,* Regular Session, 1971, pages 338-342.

However, the relator makes a valid challenge to Chapter 127 upon the grounds that for service after 1971 the Legislature failed to comply with the Commission's recommendation by permitting legislators to be members of other State retirement systems; by providing for automatic increases in the annuity of legislators based upon increases in compensation paid to active members of the Legislature; and, by permitting legislators to receive credit in the system from two jobs simultaneously. We agree with all of these arguments by the relator.

The resolution of the Citizens Legislative Compensation Commission said on the subject of legislative pensions:

"RESOLVED, FURTHER, That members of the Legislature shall henceforth be entitled to participate in the West Virginia Public Employees Retirement System on the same basis as any officer or employee of the state, it being understood that, with respect to legislative compensation received by members in the year one thousand nine hundred and seventy-one or thereafter, final average salary means their actual compensation in the form of salary and additional per diem compensation (not including any expense allowance or reimbursement of expense) without any multiple in excess of one times actual salary with respect to the formula for benefits or the formula for contributions; thus leaving unchanged the definition of final average salary as it may relate to legislative compensation received prior to the year one thousand nine hundred and seventy-one."

Chapter 127 makes the following provisions with regard to legislative pensions:

"(b) The membership of the retirement system shall not include any person who is a

member of, or who has been retired by, the state teachers' retirement system, the judges' retirement system, the retirement system of the department of public safety, or any municipal retirement system for either, or both, policemen or firemen; and the West Virginia department of employment security, by the commissioner of such department, may elect whether its employees will accept coverage under this article or be covered under the authorization of a separate enactment: *Provided,* That such exclusions of membership shall not apply to any member of the state Legislature, the clerk of the House of Delegates, the clerk of the state Senate or to any member of the legislative body of any political subdivision provided he once becomes a contributing member of the retirement system.

\* \* \*

"The annuity of any member of the Legislature who participates in the retirement system as a member of the Legislature and who retires under this article or of any former member of the Legislature who has retired under this article (including any former member of the Legislature who has retired under this article and whose annuity was readjusted as of March one, one thousand nine hundred seventy, under the former provisions of this section) shall be increased from time to time during the period of his retirement when and if the legislative compensation paid under section two, article two-a, chapter four of this code to a member of the Legislature shall be increased to the point where a higher annuity would be payable to the retirant if he were retiring as of the effective date of the latest increase in such legislative compensation, but on the basis of his years of credited service to the date of his actual retirement."

Clearly these provisions violate the requirement established by the Citizens Committee that legislators participate on the same basis as other State employees. Participation by legislators in more than one retirement system discriminates in favor of legislators, while automatic increases in their annuities based upon increases in the compensation of active members provides a benefit

not accorded other public employees, who must await special action of the Legislature in order to permit their annuities to be increased to compensate for inflation or other changes in circumstances. Therefore, to the extent that Chapter 127 accords benefits to legislators based upon service during or after 1971, which are more favorable than the benefits accorded to other members of the system, the statute is invalid as in excess of the authority conferred upon the Legislature by the Compensation Commission. As these provisions are not essential to effect the purpose of other provisions of the Act, they are severable and otherwise Chapter 127 is valid. *State ex rel. Building Commission v. Bailey,* 151 W.Va. 79, 150 S.E.2d 449 (1966); *Raleigh County Court v. Painter,* 123 W.Va. 415, 15 S.E.2d 396 (1941); *Prichard v. DeVan,* 114 W.Va. 509, 172 S.E. 711 (1934).

## IV

The relator's second constitutional argument is that Article VI, Section 38 bars the payment of increased retirement benefits to any legislator over those in effect at the beginning of the term at which he was elected and therefore bars the inclusion of service before July 1, 1961, as part of credited service in computing retirement annuities. Article VI, Section 38 states in part:

"No extra compensation shall be granted or allowed to any public officer, agent, servant or contractor, after the services shall have been rendered or the contract made; nor shall any legislature authorize the payment of any claim or part thereof, hereafter created against the State, under any agreement or contract made, without express authority of law; and all such unauthorized agreements shall be null and void. Nor shall the salary of any public officer be increased or diminished during his term of office . . . ."

Relator argues that pensions are extra compensation granted to a public officer "after the services shall have been rendered," and that such a pension is an increase in

the salary of a public officer during his term of office. This issue is squarely resolved by prior holdings of this Court in which we have ruled that membership in a retirement system does not constitute extra compensation within the meaning of Section 38. *Patteson v. Sims, supra; University v. Sims, supra.* A pension program is only a contingent asset to an employee after long-term service with the same employer. In the cases just cited we have held that there is a public purpose which over-rides any ancillary private gain to an individual and, therefore, the public purpose removes pension programs from the proscription of Article VI, Section 38, as such pension programs are designed primarily to attract to government service able and competent people who will remain in the active employ of the government for an extended period. As the development of competence through experience is a legitimate State objective, pensions are not proscribed by constitutional provisions similar to Article VI, Section 38. *Nelson v. City of Los Angeles, supra.*

## V

The relator further asserts that legislative pensions violate Article VI, Section 15 of the *Constitution of the State of West Virginia,* which provides in pertinent part:

". . . Nor shall any member of the legislature be interested, directly or indirectly, in any contract with the State, or any county thereof, authorized by any law passed during the term for which he shall have been elected."

The relator asserts that the provisions of Section 15, *supra* deny legislators the right to participate in a retirement system because such participation would constitute a contract between the legislator and the State.

Modern cases have uniformly held that a public officer's right to a pension is not a contract in the sense contemplated by Section 15. *Nelson v. City of Los Angeles, supra; Bedford v. White,* 106 Colorado 439, 106 P.2d 469

(1940). The Court in *Bedford* considered government pensions and spoke of them in the following language:

> "A pension is not a matter of contract, and is not founded upon any legal liability. No man has a legal vested right to a pension; it is a mere bounty or gratuity given by the government in consideration or recognition of meritorious past services . . . . It may be bestowed upon such persons and upon such terms as the law-making body of the government prescribes. And, 'its payment must be made and accepted in exact conformity with the terms of the grant, and must be subject to all the limitations, conditions and exceptions therein contained.' It is, at most, an expectancy granted by the law. . . ."

This Court ruled in *Cawley v. The Board of Trustees of Firemen's Pension or Relief Fund,* 138 W.Va. 571, 581, 76 S.E.2d 683, 688 (1953) that:

> ". . .[T]he prospective beneficiaries of that fund have no vested right in it. True, they may have an expectancy to participate in the fund when otherwise qualified."

See *Taylor v. The Board of Education of the County of Cabell,* 152 W.Va. 761, 166 S.E.2d 150 (1969); *State ex rel. Fox v. Board of Trustees,* 148 W.Va. 369, 135 S.E.2d 262 (1964).

We therefore hold that Article VI, Section 15 of the *Constitution of the State of West Virginia* does not prohibit the enactment of a legislative pension system.

## VI

Relator further challenges the legislative pension program between 1961 and 1971 upon the grounds that the title to the 1961 Act, Chapter 118, *Acts of the Legislature,* Regular Session, 1961, fails to set forth the fact that legislators are to be included in that legislation, in contravention of Article VI, Section 30 of the *Constitution of the State of West Virginia.* Article VI, Section 30 of the *Constitution,* insofar as relevant says:

> "No act hereafter passed, shall embrace more than one object, and that shall be expressed in the title. But if any object shall be embraced in an

act which is not so expressed, the act shall be void only as to so much thereof, as shall not be so expressed . . . ."

The title to Chapter 118, *Acts of the Legislature*, Regular Session, 1961, read as follows:

"An act to amend chapter five of the *code of West Virginia,* one thousand nine hundred thirty-one, as amended, by adding thereto a new article, designated article ten, relating to a contributing retirement system for persons *in the employ* of the state and affiliated political subdivisions of the state." [Emphasis supplied]

While the relator contends that legislators are included as participants in the Act, and therefore should have been included in the title, the respondents have urged that the phrase "in the employ of the state" is broad enough in its language to satisfy the requirement of Section 30. The parties, therefore, have raised the issue of whether a legislator is an officer or an employee; however, the Court believes this distinction unnecessary to the resolution of the issue. The language "in the employ of the state," is used in the broadest possible sense and encompasses officers as well as employees. Under the Constitution, this Court held in *State v. Scarbrough,* 108 W.Va. 9, 11, 150 S.E. 219, 220 (1929) that a title will be sufficient if:

"[The title] gives a fair and reasonable index to the purposes of the act. Nothing more is required. . . . The language employed in the title of a statute must be construed in its most comprehensive and liberal sense favorable to the validity of the act."

The same interpretation was given in *Sypolt v. Shaffer,* 130 W.Va. 310, 316, 43 S.E.2d 235, 239 (1947) which said:

". . . All titles can be elaborated and many improved. However, the test of their sufficiency is whether they will convey to persons interested in the actual subject matter enough information to provoke the reading of the act, and will also properly restrict the purview of the act to a single topic."

Finally this Court said in *City of Wheeling, et al. v. American Casualty Co.,* 131 W.Va. 584, 595, 48 S.E.2d 404, 410 (1948).

"[i]f the title to an act is sufficiently clear and full as not to mislead the legislators, it satisfies the requirements of Section 30, Article VI of the Constitution of this State, [citations omitted]; and that constitutional provision does not require the details of the legislation to be disclosed in the title; [citations omitted] . . . Incidental or auxiliary objects which are germane to the principal object of a statute may be included in the statute without being stated in the title."

Accordingly, we hold that the title of the Act was sufficiently specific to have provoked a reading of the entire statute by a person interested in its subject matter and, therefore, the original pension legislation concerning legislators was not invalid for lack of a sufficient title. *State ex rel. Graney v. Sims,* 144 W.Va. 72, 105 S.E.2d 886 (1958).

## VII

Finally, relator suggests that there is a denial of equal protection of the laws under the Fourteenth Amendment to the *Constitution of the United States* because of the disparity between benefits based upon pre-1971 service accorded to legislators as compared to the benefits accorded other members of the Public Employees Retirement System for their service before 1971. The Court is of the opinion that the multiples of four and eight established by Chapter 158, *Acts of the Legislature,* Regular Session, 1967 and Chapter 43, *Acts of the Legislature,* Regular Session, 1968 respectively are shocking to the conscience, and that other discriminatory sections more favorable to legislators than other employees are equally shocking. Although the Court believe that the allegation of denial of equal protection raises a substantial issue, the point was neither briefed nor argued by the parties. The relator raised the issue without argument or authorities, candidly admitting that he lacks standing to challenge the pension

system for denial of equal protection as he is not a member of the class adversely affected by the alleged discrimination. The authorities agree that relator lacks standing. *Barrows v. Jackson,* 346 U.S. 249, 97 L. Ed. 1586, 73 S. Ct. 1031 (1953); *Shearer v. Burnet,* 285 U.S. 228, 76 L. Ed. 724, 52 S. Ct. 332 (1932). Therefore the Court declines to pass upon this question as it is not necessary to the resolution of the other issues of this case.

For the foregoing reasons we hold the pension program under challenge constitutionally valid under the *Constitution of the State of West Virginia;* however, we hold such portions of Chapter 127, *Acts of the Legislature,* Regular Session, 1971, as accord legislators greater benefits for service after 1971 than other State employees in the system invalid as not conforming to the resolution of the Legislative Compensation Commission, and hold these provisions severable from the valid provisions of the Act.

*Writ moulded to conform to this opinion; writ granted in part and denied in part.*