In the Matter of MERLE E. DAY, Appellant, against JOSEPH MRUK et al., as Members of the Board of Police Pensions of the City of Buffalo, Respondents.

Argued May 27, 1954; decided July 14, 1954.

*Gilbert J. Pedersen* for appellant. I. Petitioner is as of right entitled to retire on his application, having served upwards of twenty years in the police department of the City of Buffalo. (*Lynch* v. *United States*, 292 U. S. 571; *Frisbie* v. *United States*, 157 U. S. 160; *United States* v. *Teller*, 107 U. S. 64; *People ex rel. Devery* v. *Coler*, 173 N. Y. 103; *Hoar* v. *City Yonkers*, 295 N. Y. 274; *Roddy* v. *Valentine*, 268 N. Y. 228; *Dodge* v. *Board of Educ.*, 302 U. S. 74; *Pennie* v. *Reis*, 132 U. S. 464; *Matter of Friel* v. *McAdoo*, 101 App. Div. 155, 181 N. Y. 558.) II. The Constitutional Amendment of 1938, effective July 1, 1940, merely stated the pre-1938 law insofar as petitioner was concerned. III. The intent of the Constitutional Convention in the establishment of a later effective date for

section 7 of article V was not to give municipalities time to divest members who had vested rights. IV. A construction of the statutes involved opposed to petitioner's interest should be avoided. (*Matter of Rosenberg* v. *Board of Estimate of City of N. Y.*, 170 Misc. 800.) V. Petitioner had the right to rely on the 1930 status of the law. (*Matter of Graef* v. *Department of Health of City of N. Y.*, 131 Misc. 258.) VI. Petitioner's contractual rights to pension is not '' extra compensation '' within the meaning of section 10 of article IX of the Constitution of the State of New York. (*Matter of Mahon* v. *Board of Educ. of City of N. Y.*, 68 App. Div. 154, 171 N. Y. 263; *People ex rel. Roth* v. *Kane*, 231 App. Div. 790, 256 N. Y. 684.)

*William B. Lawless, Jr., Corporation Counsel* (*Gerald J. Shields* of counsel), for respondents. The City of Buffalo had jurisdiction to enact both the old and the new pension laws. Both were enacted and in force prior to July 1, 1940, the date referred to in section 7 of article V of the New York Constitution. The pension funds in both laws were public funds and a member prior to retirement and prior to the above constitutional provision, not having fulfilled the statutory conditions when application for pension was made, had no vested interest therein. (*Roddy* v. *Valentine*, 268 N. Y. 228; *People ex rel. Devery* v. *Coler*, 173 N. Y. 103; *Pennie* v. *Reis*, 132 U. S. 464; *Matter of Friel* v. *McAdoo*, 101 App. Div. 155, 181 N. Y. 558; *United States* v. *Teller*, 107 U. S. 64; *Dodge* v. *Board of Educ.*, 302 U. S. 74; *Lynch* v. *United States*, 292 U. S. 571; *Frisbie* v. *United States*, 157 U. S. 160.) II. Petitioner seeks in this proceeding to obtain a pension for service not in compliance with the existing provisions of the charter now in full force and effect. Such pension, if granted, would violate section 10 of article IX of the New York Constitution. (*Matter of Mahon* v. *Board of Educ. of City of N. Y.*, 68 App. Div. 154, 171 N. Y. 263; *People ex rel. Roth* v. *Kane*, 231 App. Div. 790, 256 N. Y. 684.) III. The Buffalo police pension fund is a fund created wholly or largely out of public moneys and not a fund created substantially by contributions of its members. IV. Petitioner had no vested rights prior to the enactment of Local Law No. 8 of 1940, and upon the effective date petitioner's membership in the police

pension fund became a contractual relationship, the benefits of which shall not be diminished or impaired. Since the enactment of the constitutional amendment, the courts of this State have held that a contractual relationship exists between the members of police pension funds of the State or of a civil division thereof which may not be diminished or impaired. (*White* v. *Hussey,* 275 App. Div. 714; *Hoar* v. *City of Yonkers,* 295 N. Y. 274; *Cashman* v. *Teachers' Retirement Bd.,* 193 Misc. 57, 275 App. Div. 908, 301 N. Y. 501.)

VAN VOORHIS, J. This appeal concerns the status of petitioner as a member of the police pension fund of the City of Buffalo. He entered the police department as a patrolman on June 5, 1930, became a member of the police pension fund on that date making his regular contributions at the rate of 4% and 5% of his salary, and applied for retirement September 22, 1952, effective October 1, 1952. Thus it appeared that he served as patrolman for a period of twenty-two years. After a hearing before the board of police pensions, his application for a service pension was rejected on October 24, 1952, and he is still serving as patrolman in the Buffalo Police Department.

At the time of his employment as patrolman in 1930, section 464 (subd. [2]) of the Charter of the City of Buffalo provided that members of the police department were entitled to pensions " after twenty years of actual service in said department or a combined service of twenty years in the police and fire departments of the city." Said provision was repealed by Local Law No. 8 adopted June 30, 1940, and in substitution therefor it was enacted that any member who had completed thirty years of actual service should be entitled to a pension. This thirty years was reduced to twenty-five years by Local Law No. 1 of 1945.

Other contingencies are covered in these provisions of the charter, which it is not necessary to specify inasmuch as they do not apply to petitioner's situation. He had, for example, not served twenty years as patrolman at the time when section 464 was amended in 1940, nor is it a compulsory retirement.

Petitioner's right to the relief which he has demanded depends upon whether the twenty-year clause as it existed in section 464 of the Buffalo City Charter in 1930 when he entered the police department as patrolman, constituted a vested interest

in the nature of a contract right inuring to his benefit which could not constitutionally be altered in 1940 and 1945 when the length of time required in which to entitle him to a pension was increased from twenty to thirty and then reduced to twenty-five years. If he obtained a vested contractual right in the clause entitling him to a pension after twenty years of service, then, manifestly, the required length of service could not be extended after he had become a patrolman as a result of any amendment to the charter by local law or otherwise. Upon the other hand, if he was entitled to a mere expectancy, and if no contractual right to a pension could have matured prior to his actual retirement, then the increase of the length of service required to entitle him to a pension, from twenty to twenty-five years, was lawful, and he cannot retire until he shall have completed twenty-five years of service in the police department which he has not yet done.

Section 7 of article V was added to the Constitution of the State of New York in 1938. The amendment took effect except as otherwise provided on January 1, 1939 (art. XX, § 1). The effective date of section 7 of article V was postponed for one and one-half years, however, until July 1, 1940, presumably to enable the State and its civil divisions to review their pension systems and to adjust, amend, modify or supplement the provisions of existing systems in the light of the fact that after such effective date such systems were no longer gratuitous, but by virtue of the new amendment became contracts and the members of pension systems thereby acquired vested interests which could not thereafter be diminished or impaired. Excerpts from the proceedings of the Convention appear to bear out this conclusion. The text of this amendment to the State Constitution is as follows: " [*Membership in retirement systems; benefits not to be diminished or impaired.*] § 7. After July 1, 1940, membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired."

Theretofore it had been held that members of pension and retirement systems generally had no vested interest therein until the right to retirement matured. The leading case was *Roddy* v. *Valentine* (268 N. Y. 228, 231–232). It was there held,

prior to this amendment to the Constitution, that a policeman obtained a vested right to his pension upon his retirement, but the court was careful to point out that prior thereto no such contractual right inhered in a member of the pension funds, stating:

"Where the statutory scheme creates a fund wholly or largely out of public moneys, the interest of the member down to the point where there has been compliance with all precedent conditions and the award has been or as of right should have been made, can hardly be deemed contractual. There has been a suggestion that it is quasi-contractual. (40 Harvard Law Review, 504, 505.) In *Pennie* v. *Reis* (132 U. S. 464, 471) it is called ' a mere expectancy created by the law.' But whatever its legal nature may be, there seems to be no doubt that it is subject to change or even to revocation at the will of the Legislature. (*People ex rel. Devery* v. *Coler,* 173 N. Y. 103; *Pennie* v. *Reis, supra; Matter of Friel,* 101 App. Div. 155; affd., 181 N. Y. 558.)

"Where, however, the statutory conditions for retirement existing when application is made have been met and the award of the pension or benefit has been made, or as of right should have been made (*Matter of O'Brien* v. *New York State Teachers' Retirement Board,* 215 App. Div. 220; affd., 244 N. Y. 530), the interest becomes vested and takes on the attributes of a contract, which in the absence of statutory reservations, may not legally be diminished or otherwise adversely affected by subsequent legislation. (*Pennie* v. *Reis, supra; People ex rel. Mulvey* v. *York,* 41 App. Div. 419; *Klench* v. *Board of Pension Fund Comrs.,* 79 Cal. App. 171, and cases therein cited.) "

The same appears to have been held in *Matter of Friel* v. *McAdoo* (101 App. Div. 155, affd. 181 N. Y. 558), where the question arose concerning the pension rights of a member of the police force of the City of Brooklyn, after Brooklyn had become part of Greater New York. It was held that he had no contractual vested right in the Charter of the former City of Brooklyn, the opinion stating that " The relator had no vested right in an act of the Legislature; the State, in the exercise of its sovereign authority, might have repealed absolutely the statute of 1888 under which he claims, and it might have abolished the

office of policeman in the city of Brooklyn, or have destroyed absolutely the municipal corporation, and the relator would have had no legal right to complain.'' The opinion continues by pointing out that instead of such a drastic change, the Legislature contented itself '' with what amounts to an amendment of subdivision 6 of section 42 of title 11 of chapter 583 of the Laws of 1888, and has given the police commissioner the power to retire the relator after serving twenty years, if he is at that time fifty-five years of age '' (p. 158). Even so, the new act rendered such retirement on a pension discretionary at the election of the police commissioner. It was held that the relator Friel could not compel the police commissioner to retire him on a pension, inasmuch as the mandatory requirement to that effect at the election of the policeman had been changed by the Greater New York Charter so as to render such retirement in the discretion of the police commissioner.

This is also the holding of the Supreme Court of the United States (*Pennie* v. *Reis*, 132 U. S. 464; *Dodge* v. *Board of Educ.*, 302 U. S. 74).

Petitioner-appellant has endeavored to draw a distinction between the rule outlined by this court in *Roddy* v. *Valentine* (*supra*) and the present case, by calling attention to part of the language which has been quoted above, viz., '' Where the statutory scheme creates a fund wholly or largely out of public moneys,'' the interest of the member may be altered by statute and can hardly be deemed to be contractual. Appellant's brief points out that, during the two years immediately prior to the change in the law in 1940, the members of the Buffalo police pension fund contributed approximately $100,000 and that the city's contribution was approximately $200,000. Although the city has indicated that the amounts contributed by members during the years 1947-1952 are much less than one third, and ranged from 13.002% to 14.286%, petitioner counters by pointing out that since 1940 most of the members of the old police pension fund have transferred to the State Retirement System or their employment has begun since 1940 and they have gone into the State Retirement System at the inception of their membership in the police department. These statements of fact are probably true, and must be accepted as true for the purposes of this

appeal from an order dismissing the petition as matter of law. We face the question on the assumption that prior to 1940 the members of the police pension fund paid about one third of its annual receipts.

The language in the opinion in *Roddy* v. *Valentine* (*supra*) on which petitioner-appellant relies, was dictum that the interest of the member is noncontractual '' Where the statutory scheme creates a fund wholly or largely out of public moneys ''. The object of the careful opinion written by Judge CROUCH was to insure that the Bench and the Bar did not mistake the effect of the decision holding that a member had a contractual right from and after the time of his retirement to receive the pension or retirement allowance to which he was then entitled by statute, and to guard against confusion of that situation with the acquirement of a vested right in the statute as it existed at the time when the applicant became a member of the pension system but before his retirement from the service. So long as that broad distinction was pointed out, there was no need in the *Roddy* case to define its precise boundary inasmuch as it was clear that in any event Roddy fell on the other side of the line. He had a vested right since he had already retired. It was consequently not necessary to define precisely under what other circumstances a policeman or other public employee might obtain a contractual right if the particular statutory retirement plan differed from the customary and purported to grant such a right. It appears to have been the thought that if the member purchased a retirement allowance or annuity out of his own money in substantial part, situations might arise where the scheme or retirement plan was in such form that it could not later be altered by statute. Using this language which was inserted in the *Roddy* opinion as a precaution, appellant attempts to place a precise construction upon the words '' wholly or largely out of public moneys ''. It is contended that where a policeman or all of the policemen who are members of this fund have contributed at the rate of one third of the annual receipts, and the city has subscribed the remaining two thirds, it can no longer be considered that the fund is created '' largely '' out of public moneys. Of course, if these words be regarded as fur-. nishing an exact criterion, it might still be contended with force

that the city was " largely " creating this fund by supplying two thirds as against one third privately contributed by the members. It seems, however, that this language was suitable as a caveat, but that where constitutional issues are involved it is not sufficiently definite to be used as formulating an exact rule.

· It might be necessary to consider more carefully the constitutional question of whether property of petitioner would have been taken without due process of law, if the refunding of his own contributions were regarded as being subject exclusively to the discretion either of the municipal authorities or of the Legislature. It is not necessary to meet that issue, however, inasmuch as section 462 of the Buffalo City Charter as amended provides that each member of the police pension fund shall continue to be a member until death, resignation from the department, or removal therefrom in the manner provided by law, " or resignation from membership in said fund." Resignation is provided for more explicitly in what immediately follows in this section, which says " Subject to the provisions of section four hundred sixty-nine, any member may resign from membership in said fund at his election. Such resignation shall be in writing, signed, acknowledged and filed with the board. Thereupon all deductions from his compensation theretofore paid into said pension fund shall be returned to him without interest and his right and the right of any dependent to benefits from said fund shall terminate."

In other words, even if petitioner did, along with other members of the fund, pay a substantial sum in comparison to that contributed by the city, no unconstitutionality would appear to be involved in changing the provisions of the pension requirements prior to July 1, 1940, provided that a means was supplied, as it has been, to refund to the member that which he had himself paid in. It bears analogy to the difference with which we are familiar in the State Retirement System, between the annuity and the pension which together go to make up the customary retirement allowance. There would be no unconstitutionality prior to July 1, 1940, in changing the pension rights, provided that the member were permitted to withdraw what he had paid in. That having been done in 1940 under section 462 of

the Buffalo City Charter, which has been quoted above, it is not necessary to inquire whether under *Roddy* v. *Valentine* (*supra*) the fund was created " wholly or largely out of public moneys ". That language, it should be recalled, was dictum in any event, inserted for the reason that the court desired to leave no ambiguity concerning whether prior to the amendment effective July 1, 1940, the provisions of the city charter or pension plan invested a member with a contractual right prior to his application for retirement. *Roddy* v. *Valentine* held that such a right matured upon his retirement, and it was thought well to emphasize that no such contract right matured at the time he became a member of the system and prior to his application for retirement. That being the situation, and there being no doubt that Roddy fell on the other side of the line, there was no occasion to define precisely where the line of demarcation would fall. In other words, this court recognized that even prior to 1940 there might be exceptional situations where the language of a retirement plan was drawn in such a way as to create a contractual right, and it was conceived that that would be most likely to occur where the members individually had supplied most of the money. It was not necessary to consider in advance what all such situations might be, and it seems that here any constitutional right on the part of the member is protected by permitting him to withdraw his own funds under section 462 as amended in 1940. That left it open to the city council by local law to alter the pension rights, without infringing the member's right to receive back his own contribution. Even if the language of *Roddy* v. *Valentine* were to be adopted as a precise criterion, it could hardly be held that the Buffalo police pension fund was created mainly out of private contributions, when, even according to petitioner's ·contention, at no time was more than one third contributed privately by the members.

It is recommended that the order appealed from should be affirmed.

Lewis, Ch. J., Conway, Desmond, Dye, Fuld and Froessel, JJ., concur.

Order affirmed.