141 N.J. Super. 114 (1976)
357 A.2d 311
CHAMBER OF COMMERCE OF EASTERN UNION COUNTY, A NON-PROFIT CORPORATION OF THE STATE OF NEW JERSEY; THE ELIZABETH DAILY JOURNAL, A DIVISION OF MID-ATLANTIC NEWSPAPERS, INC., A CORPORATION OF THE STATE OF NEW JERSEY; C. THOMAS THOMAS; JAMES M. Mc GOWAN, PLAINTIFFS,
v.
RICHARD LEONE, TREASURER OF THE STATE OF NEW JERSEY; THE LEGISLATURE OF THE STATE OF NEW JERSEY; S. HOWARD WOODSON, SPEAKER OF THE GENERAL ASSEMBLY; FRANK J. DODD, PRESIDENT OF THE SENATE; BRENDAN BYRNE, GOVERNOR OF THE STATE OF NEW JERSEY; F. JOSEPH CARRAGHER, ACTING SECRETARY OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided April 12, 1976.
*118 Messrs. John M. Boyle and William A. Cambria for plaintiffs (Messrs. Sauer, Boyle, Dwyer and Canellis, attorneys).
Mr. Theodore A. Winard, Assistant Attorney General, for defendants Leone, Byrne and Carragher (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
Mr. David J. Goldberg for defendants General Assembly and Speaker of the General Assembly (Messrs. Warren. Goldberg & Berman, attorneys).
Mr. John P. Nulty for defendants Frank J. Dodd and New Jersey Senate (Messrs. DeCotiis, Nulty & Hayden, attorneys).
*119 ACKERMAN, J.S.C.
This matter is before the court on cross-motions for summary judgment. The motions arise out of an action challenging the constitutionality of the Legislative Pension Act of 1972, N.J.S.A. 43:15A-135 through 43:15A-140, and the constitutional validity of a law appropriating monies to provide legislators with district home offices, L. 1974, cc. 58 and 83. Plaintiffs are individual and corporate entities who contend that the laws at issue are violative of the New Jersey Constitution and who, as taxpayers of the State of New Jersey, seek to restrain expenditures pursuant to these laws. Defendants are the Governor of the State of New Jersey, the Treasurer of New Jersey, New Jersey's then Acting Secretary of State, the New Jersey State Senate and its President and the New Jersey General Assembly and its Speaker. The Senate and the General Assembly, as well as the President of the Senate and the Speaker of the General Assembly, have filed a cross-claim against the State Treasurer to compel him to permit the purchase of credit for prior legislative service in accordance with the provisions of the Legislative Pension Act.
The principal act at issue herein, the Legislative Pension Act, was approved on November 3, 1972, L. 1972, c. 167, now codified as N.J.S.A. 43:15A-135 through 43:15A-140, inclusive. Insofar as pertinent to the instant action, the act's provisions may be summarized as follows:
N.J.S.A. 43:15A-135 states that all members of the Legislature shall become members of the Public Employees Retirement Systems.
N.J.S.A. 43:15A-136 provides that each legislator shall contribute 5% of his legislative salary to separate account in the annuity savings fund.
N.J.S.A. 43:15A-137 allows a legislator to purchase credits for prior legislative service at the rate of 5% of his legislative salary for each year for which credit may be claimed.
*120 N.J.S.A. 43:15A-138 requires that no benefits under the Legislative Pensions Act can be paid until the legislator has completed all public employment covered by the Public Employees Retirement System. At that time, if a legislator has reached age 60, he is entitled to receive an annuity arrived at by the contributions made by him during his term of service and an additional pension so as to bring total payment equal to 3% of the amount earned by the legislator in his final year in the Legislature, multiplied by the number of years of service.
N.J.S.A. 43:15A-139 allows a legislator with at least eight years service who otherwise qualifies to select among various options as to the method of receipt of pension benefits.
N.J.S.A. 43:15A-140 deals with the return of contributions to a legislator and the right to elect benefits if the legislator qualifies for benefits under more than one section of the Public Employees' Retirement System.
Finally, by its own provisions "the act [was to] take effect immediately."
Plaintiffs contend that this act violates N.J. Const. (1947), Art. IV, § IV, par. 7, which provides, in pertinent part:
Members of the Senate and General Assembly shall receive annually, during the term for which they shall have been elected and while they shall hold their office, such compensation as shall, from time to time, be fixed by law and no other allowance or emolument, directly or indirectly, for any purpose whatever. * * * [hereinafter cited as paragraph 7]
In brief, plaintiffs assert that the act violates the above constitutional provision in "eight separate and distinct ways":
1. Under the act, compensation is not received annually but is paid in various installments both during the term of service and after the criteria for retirement mandated by the act are satisfied.

*121 2. The annual pension payments upon retirement which are provided by the act are not paid during the term for which the individual legislator has been elected.
3. The act requires that the pension be paid only upon retirement from all public service. This is directly contrary to the requirement in the Constitution that the compensation be paid while the office is held.
4. The act provides for a pension payment to be added to the contributory annuity. Thus, the act specifically provides for additional payments to legislators after retirement.
5. The pension benefits provided by the act make it impossible to have the compensation for legislative service "fixed by law." As a result, the total compensation payable to a legislator for a year of service is dependent upon the total years of service and the life span of individual members.
6. The compensation for legislators cannot be fixed, and will not be uniform for each member, because, under the act, the compensation payable for one year of service is dependent upon the variable factors of total years of service and the life span of individual members.
7. The Legislative Pensions Act provides for a "retirement allowance." This directly contrary to the mandate of the Constitution that "no other allowance or emolument" be paid.
8. The act provides a direct additional allowance to legislators, for retirement purposes, which is specifically proscribed by the Constitution.
Plaintiffs further contend that, even if the act is constitutional under paragraph 7, it is unconstitutional under N.J. Const. (1947), Art. IV, § IV, par. 8, which provides:
The compensation of members of the Senate and General Assembly shall be fixed at the first session of the Legislature held after this Constitution takes effect, and may be increased or decreased by law from time to time thereafter, but no increase or decrease shall be effective until the legislative year following the next gene election for members of the General Assembly. [hereinafter cited as paragraph 8]
That is, plaintiffs assert that this paragraph has been violated because, pursuant thereto, the effective date must be January 8, 1974  not November 3, 1972  and also because the provision for retroactive purchase of prior service credit is in direct contravention to the prospective mandates of this paragraph. Finally, plaintiffs contend that the act *122 cannot be saved by changing the effective date thereof and/or by deleting the provision for retroactive purchase because, pursuant to the scheme of the entire act, this provision is not severable therefrom.
Plaintiffs further assert that defendants herein have violated the two constitutional paragraphs cited above by the approval, during 1974, of L. 1974, c. 58, and L. 1974, c. 83. In brief, these acts appropriated an allowance to each legislator, not to exceed $5,000, for the legislator's home district office, including furnishings, equipment and other expenses related thereto. To plaintiffs these acts constitute an improper "allowance or emolument" to legislators under paragraph 7. Finally, defendants assert that, even if otherwise proper, the allowances provided in the acts violated paragraph 8 because they were made effective immediately.
Defendants have made various responses to plaintiffs' constitutional arguments. On October 16, 1974 the Attorney General of New Jersey issued Formal Opinion No. 12 in which he reviewed the Legislative Pension Act, including the history relating thereto, and concluded that the act was partially unconstitutional under paragraph 8 because of its effective date and because of the provision for retroactive purchase of credit for service. However, the opinion concluded that the effective date could be changed to January 8, 1974; that the unconstitutional provision could be deleted, and that, so modified, the act would be constitutional under both paragraphs 7 and 8. The act is presently being administered in accordance with that opinion.
As to the constitutionality of the acts providing appropriations for district home offices, the Attorney General on September 5, 1974 issued Opinion No. 6 in which he concluded that, in all respects, these acts were consistent with the New Jersey Constitution.
Defendants Leone, Byrne and Carragher have adopted the positions articulated in the opinions of the Attorney General. That is, these defendants agree with plaintiffs that the Legislative Pension Act does violate paragraph 8, but disagree *123 with plaintiffs as to whether the violative provisions of the act can be changed or deleted so as to render the act, as modified, constitutional. In short, these defendants contend that the act can be so modified and, as such, this act, as well as the act relating to district home offices, is fully consistent with paragraphs 7 and 8.
The legislative defendants disagree with plaintiffs, and hence agree with Attorney General Opinion No. 12 with respect to the constitutionality of the Legislative Pension Act under paragraph 7. These defendants also agree with Attorney General Opinion No. 6 on the constitutionality of the act relating to home district offices. However, whereas the Attorney General upheld the Legislative Pension Act by viewing pensions as a permissible form of deferred compensation under paragraph 7, these other defendants contend that this constitutional provision was not intended to  and did not, in fact  deal in any way with pensions. As such, these defendants assert that the entire issue of pensions must be analyzed separate and distinct from the cited constitutional paragraphs; consequently, any provisions relating to pensions need not be subject to the particular requirements of these paragraphs. Said defendants further contend that, after analyzing all the constitutional arguments in favor of and against the act at issue, they have concluded that it does not violate paragraph 7 or any other constitutional provision. Finally, these defendants maintain that, as the issue of pensions is not governed in any way by paragraphs 7 or 8, there is no constitutional basis for either changing the effective date of the act or deleting the provision for retroactive purchase of credit for prior service. In sum, these defendants contend that the acts challenged by plaintiffs are constitutional in every respect; they thus seek a dismissal of plaintiffs' complaint and further seek a judgment directing the State Treasurer to allow the purchase of credit for prior legislative services as originally provided for in the Legislative Pension Act.
*124 As noted above, this matter is before the court on cross-motions for summary judgment. R. 4:46-2, the rule governing summary judgment motions, provides in pertinent part:
The judgment or order sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law,
In the present case it appears that the facts as to the acts at issue herein are not in dispute. Of course, the case is replete with disputes as to the history, purpose, effect and ultimate constitutionality of these acts. In determining whether summary judgment is appropriate, the court must analyze these disputes under the law relating thereto, for it is only upon the conclusion of this analysis that the court will be prepared to determine whether any of the moving parties "is entitled to a judgment or order as a matter of law." See R. 4:46-2.
This court finds that the analysis involved herein requires a consideration of four separate issues:
1. Is the Legislative Pension Act constitutional under paragraph 7?
2. Is the Legislative Pension Act constitutional under paragraph 8?
3. Is the act severable?
4. Does the act relating to home district offices violate either paragraph 7 or paragraph 8?

I

Constitutionality of the Legislative Pension Act under Art. IV, § IV, par. 7
This is a case of first impression in our State. However, as it is an action involving the constitutionality of a legislative enactment, the court is not only guided but, in *125 fact, is bound by the strong and long-time presumption in our State in favor of the validity of a legislative enactment. That is, an act should not be declared unconstitutional unless plaintiffs sustain their burden  a burden equivalent to beyond a reasonable doubt  that there is no reasonable basis for the act and that it plainly contravened a constitutional prohibition. See, e.g., N.J. Sports and Exposition Auth. v. McCrane, 61 N.J. 1, 8 (1972), aff'd 62 N.J. 248 (1973), app. dism. 409 U.S. 943, 93 S.Ct. 270, 34 L.Ed.2d 215 (1972); Grand Union v. Sills, 43 N.J. 390, 397 (1964); Roe v. Kervick, 42 N.J. 191, 230 (1964); Daly v. Daly, 21 N.J. 599, 604 (1956); Jamouneau v. Harner, 16 N.J. 500, 515-516, 518-519 (1954), cert. den., 349 U.S. 904, 75 S.Ct. 580, 99 L.Ed. 1241 (1955); Lynch v. Edgewater, 8 N.J. 279, 290-291 (1951); Davis v. Heil, 132 N.J. Super. 283, 289-291 (App. Div. 1975), aff'd 68 N.J. 423 (1975); Inganamort v. Fort Lee, 120 N.J. Super. 286, 301-302 (Law Div. 1972), aff'd 62 N.J. 521 (1973).
In approaching the problem before it with these principles in mind, the court finds that the only decision interpreting paragraph 7 is Wilentz ex rel. v. Stanger, 129 N.J.L. 606 (E. & A. 1943). Wilentz was decided under the predecessor to the present Article, which predecessor limited compensation of legislators to $500. Although Wilentz did not engage in an extended discussion of the constitutional provision at issue, it did note (at 609) that the proscription against payment of additional allowances of compensation in excess of $500 included monies paid to a legislator for his services as counsel to the Director of Milk Control.
However, Wilentz is in no way dispositive of the instant case. For one thing, the present constitutional provision does not limit compensation to $500, but rather the limitation is expressed as "such compensation as shall, from time to time, be fixed by law." For the present compensation, see N.J.S.A. 52:10A-1. Thus, if the pension act can be sustained as "such compensation" within the dictates of paragraph 7, then Wilentz is distinguishable because the payment *126 therein, even if viewed as "compensation," exceeded the then maximum of $500. Moreover, it is arguable that the pensions at issue herein  as distinguished from the monies at issue in Wilentz  can be sustained independently of paragraph 7. That is, it is arguable that a pension is neither "compensation" nor an "allowance" or an "emolument" and, as such, it is not only distinguishable from Wilentz but its validity is not dependent of the dictates of the constitutional provision at issue herein. Thus, although Wilentz may be relevant as to what constitutes "allowances" or "emoluments," the court must refer to other authority to resolve the ultimate constitutionality of the present pension act.
An appropriate starting point for this analysis would be to review briefly the history of pension provisions for members of the New Jersey State Legislature. Subsequent to this review, the court will deal with the pertinent history relating to paragraph 7. This court must then determine whether the present pension act marks a radical departure from previous pension provisions and, if so, whether it thereby contravenes our constitutional dictates. This history was reviewed in Attorney General Opinion No. 12 and the conclusion reached therein was that the pension act was not violative of paragraph 7.
As stated in Opinion No. 12, the history of pension payments for legislators dates back to 1922 when, pursuant to an administrative practice, members of the Legislature had the option of joining the State Employees Retirement System. This option was continued until 1954 when the State Employees Retirement System was abolished and the Public Employees Retirement System was established in its stead. N.J.S.A. 43:15A-7. The administrative practice of giving legislators the option of participating in the pension system was continued under the new act, except membership was made compulsory for legislators who had served in the armed forces of the United States in time of war. N.J.S.A. 43:15A-7(c). N.J.S.A. 43:15A-7(d), an amendment *127 added in 1966, provided express statutory authorization for the optional enrollment of nonveteran legislators.
Then, in 1972, "it was deemed advisable by the Legislature to establish a new benefit and contribution schedule for its members within the existing schedule of the Public Employees Retirement System." Attorney General Opinion No. 12, at 2. That is, the Legislative Pension Act of 1972 was enacted as a "supplement" to the existent Public Employees Retirement Act and was designed "to provide for a separate set of provisions under that act for members of the Legislature." Statement to Senate Bill No. 270, Senate State Governmental and Federal and Interstate Relations Committee, March 16, 1972. According to former Governor Cahill,
This new pension law is a recognition of the invaluable service rendered by members of the Legislature at a sacrifice of time, effort, and money for the benefit of the general public. [Governor's Statement to Senate Bill No. 270, Nov. 3 1972]
In essence, the act extends mandatory enrollment in the Public Employees Retirement System to all nonveteran legislators and provides that all the benefits of that act shall be conferred on all legislators. N.J.S.A. 43:15A-135. Moreover, in addition to these benefits the Legislative Pension Act provides an "improved benefit and contribution program" for all legislators, including an "advantageous retirement allowance for those legislators who had attained the age of 60 years." Attorney General Opinion No. 12, at 2. Finally,
* * * [B]ased on actuarial projections, the Division of Pensions estimates that enactment of this legislation would require a State expenditure of $79,000.00 per year. The State's costs will remain at this figure as long as legislative salaries and the number of legislators remain the same. [Fiscal Note to Senate Bill No. 270, March 17, 1972]
Thus, it is evident that although there had been previous pension provisions for legislators, the present act does represent *128 a departure therefrom, at least to the extent that it makes a pension program mandatory and to the extent that it provides legislators with benefits "supplemental" to those provided to other public employees. As such, the constitutional validity of this act is seriously questioned.
Since there is virtually no case law interpretation of paragraph 7, the court must begin with an analysis of the history relevant to the adoption of this constitutional provision. Put another way:
We seek for the reason and spirit of the provision, considered in the context of related limitations and provisions of the instrument embodying the organic law. What is its essential quality and meaning when compared with kindred provisions operative in the same area of governmental action? [Behnke v. New Jersey Highway Authority, 13 N.J. 14, 24 (1953)]
The present provision  adopted in 1947  is a revision of the provision originally inserted into the Constitution of 1844, which stated:
Members of the Senate and General Assembly shall receive a compensation for their services, to be ascertained by law, and paid out of the treasury of the state; which compensation shall not exceed the sum of three dollars per day for the period of forty days from the commencement of the session; and shall not exceed the sum of one dollar and fifty cents per day for the remainder of the session. When convened in extra-session by the Governor, they shall receive such sum as shall be fixed for the first forty days of the ordinary session. They shall also receive the sum of one dollar for every ten miles they shall travel, in going to and returning from their place of meeting, on the most usual route. The President of the Senate and Speaker of the House of Assembly shall, in virtue of their offices, receive an additional compensation, equal to one-third of their per diem allowance as members.
This section of the Constitution of 1844 was amended in 1875 to read as follows:
Members of the Senate and General Assembly shall receive annually the sum of five hundred dollars during the time for which they shall have been elected, and while they shall hold their office, and no other allowance or emolument, directly or indirectly, for any purpose whatever.
*129 The president of the senate and the speaker of the house of assembly shall, in virtue of their offices, receive an additional compensation, equal to one-third of their allowance as members.
In essence, the debates on this provision of the 1844 Constitution  and the amendment thereto  resulted in a decision in favor of expressly fixing the salaries to be paid to legislators, rather than leaving same to the discretion of the legislators. See New Jersey State Constitutional Convention of 1844, at 297-300, 514-517. By contrast, the proceedings resulting in our present provision evidence a concern and ultimate consensus for changing from a fixed to a flexible mode of compensation, one which the legislators establish at their own discretion, subject only to the limitation that an increase or decrease in such compensation shall not become effective until the next succeeding general election. See 3 Proceedings of the Constitutional Convention of 1947, at 573, 582, 592-597, 647, 872, 885, 888.
However, these same proceedings reveal little, if any, discussion of what constitutes permissible compensation as opposed to proscribed "allowances" or "emoluments." Similarly, there is no evidence as to whether the framers intended that certain payments could conceivably constitute neither "compensation" nor "allowances" or "emoluments" and, therefore, fall entirely outside the constitutional provision. Cf. id. at 648, 689. At the same time, however, it is interesting to note that, at the time of the 1947 Constitutional Convention, the legislators did have the option of participating in a pension system, which system provided for contributions by the State. As such, it is arguable that, if the framers intended to prohibit pensions as a permissible form of compensation, they would have specifically done so at that time, since they presumably had knowledge of the existing system.
In any event, if pensions are viewed as "compensation"  and, as such, subject to the constitutional provision  the court notes that there is considerable precedent for the finding that legitimate compensation of a public employee includes *130 deferred payment of a pension benefit. See, e.g., Salz v. State House Comm'n, 18 N.J. 106, 111-112 (1955); Hayes v. Hoboken, 93 N.J.L. 432, 433-434 (E. & A. 1919); Emanuel v. Sproat, 136 N.J.L. 154, 156 (Sup. Ct. 1947), aff'd 137 N.J.L. 610 (E. & A. 1948); Passaic National Bank & Trust Co. v. Eelman, 116 N.J.L. 279, 283-284 (Sup. Ct. 1936). That is, a pension is an inducement to conscientious, efficient and honorable government services. See Hozer v. State, 95 N.J. Super. 196, 199 (App. Div. 1967), certif. den. 50 N.J. 285 (1967). As stated by our Supreme Court in Geller v. Dept. of Treasury, 53 N.J. 591 (1969):
Pensions for public employees serve a public purpose. A primary objective in establishing them is to induce able persons to enter and remain in public employment, and to render faithful and efficient service while so employed. 3 McQuillin, Municipal Corporations (3d Ed. Rev. 1963) § 12.141. They are in the nature of compensation for services previously rendered and act as an inducement to continued and faithful service. Being remedial in character, statutes creating pensions should be liberally construed and administered in favor of the persons intended to be benefited thereby. [at 597-598; emphasis supplied]
At the same time, however, no matter how desirable or how wise such a pension act might be, it must be set aside if violative of a constitutional provision. Cf. Wilentz v. Hendrickson, 133 N.J. Eq. 447 (Ch. 1943), aff'd 135 N.J. Eq. 244 (E. & A. 1944). Since we have no case law  nor any constitutional or legislative history  which deals directly with the constitutional question presented herein, it is instructive to refer to out-of-state decisions which have confronted similar questions. In fact, in signing the bill Governor Cahill noted that the benefits provided were similar to pension benefits granted by other states to members of the Legislature. See Governor's Statement, supra. Yet, the court realizes that it is not bound by these decisions and further notes that the constitutional challenges presented therein were based on constitutional provisions that are not strictly identical to our own constitutional provision.
*131 The most recent constitutional challenge to a pension plan was heard by the Court of Appeals of New York in Boryszewski v. Brydges, 37 N.Y.2d 361, 372 N.Y.S.2d 623, 334 N.E.2d 579 (1975). The constitutional provision at issue therein provided:
"Each of the state officers named in this constitution shall, during his continuance in office, receive a compensation, to be fixed by law, which shall not be increased or diminished during the term for which he shall have been elected or appointed; nor shall he receive to his own use any fees or prerequisites of office or other compensation.

* * * * * * * *
"Each member of the legislature shall receive for his service a like annual salary, to be fixed by law. * * * Neither the salary of any member nor any other allowance so fixed may be increased or diminished during, and with respect to, the term for which he shall have been elected, nor shall he be paid or receive any other extra compensation."
The argument raised was that, not only did the New York Constitution fail to authorize any kind of retirement plan for legislators  in that case contributory  but also the constitutional provision specifically precluded "future payment for past services" and thus compensation could only be paid to a legislator during the "continuance in office." However, the Court of Appeals concluded that such a pension was a proper form of "compensation" within the intendment of the constitutional provision and stated that, although the payment itself was received subsequent to a legislator's term in office, the right to receive said payment was received during the "continuance in office." Specifically, the court reasoned:
Retirement benefits in the public as in the private sector must now be viewed as a significant and integral component of current compensation. The early concept of a pension as a gratuity paid by the government in recognition of past services (see Dismuke v. United States, 297 U.S. 167, 56 S.Ct. 400, 80 L.Ed. 561) is now obsolete. Such benefits are now recognized as a type of deferred compensation (44 N.Y. Jur. Pensions and Retirement Systems, § 1, p. 256). As we observed in review of the New York State Teachers Retirement System, "the security offered by membership in the retirement system is generally regarded as an inducement *132 to employment in state service or in the public schools. The value of the retirement benefits and prospective rate of payment, especially in the face of continued inflation, is of vital concern to the [members] and might well be the determining factor in their decision to continue in the teaching profession, or seek more lucrative employment." (Birnbaum v. New York State Teachers Retirement System, 5 N.Y.2d 1, 6, 176 N.Y.S.2d 984, 987, 152 N.E.2d 241, 244). While we recognize that the inducements to as well as the rewards for public service by elected members of the executive and legislative branches of our State government are not precisely parallel to those in private employment or in non-elective positions in government service, nonetheless, in our view retirement benefits constitute as real and substantial a form of compensation as does a pay check. The only significant difference lies in the time of payment. We find nothing in the constitutional provisions on which petitioners rely which forbids deferred payment of compensation currently earned. In a literal sense the right to payment in the future is "received during continuance in office." Retirement benefits are a component of present compensation (cf. Matter of Day v. Mruk, 307 N.Y. 349, 354, 121 N.E.2d 362, 363).
We accordingly conclude that there is no substance to petitioners' claims that the executive and legislative retirement plan is unconstitutional. [37 N.Y.2d at 367; 372 N.Y.S.2d at 629, 334 N.E.2d at 583]
A similar challenge was made to a pension plan in West Virginia. Campbell v. Kelly, 202 S.E.2d 369 (Sup. Ct. 1974). The constitutional provision at issue therein was adopted in 1872 and it stated, in part:
"Each member of the legislature shall receive for his services the sum of one thousand five hundred dollars a year, and expenses for one round trip in connection with any session.... No other allowance or emolument than that by this section provided shall directly or indirectly be made or paid to the members of either house for postage, stationery, newspapers, or any other purpose whatever. * * *"
It was argued that a pension plan was an "allowance" or "emolument" prohibited by said constitutional provision. In rejecting that claim the Supreme Court of West Virginia stated:
This Court is persuaded that in the absence of evidence that it was the intent of the framers of our Constitution by Section 33 to *133 prohibit pension plans under conditions as they have changed in the last century, our Constitution should be interpreted in conformity with the great weight of precedent from other jurisdictions interpreting similar provisions of other state constitutions. All the modern decisions interpreting the power of legislators to enact pension programs hold that constitutional limitations on "allowances" or "emoluments" do not apply to pension programs. [at 375]
Although the Campbell court construed the constitutional amendment adopted in 1971 as specifically permitting the establishment of a pension system, it then iterated its finding that the original constitution did not in any way deal with pensions, and thus even pension acts adopted prior to 1971 did not contravene the constitution.
Thus, although both the highest courts of New York and West Virginia have upheld the constitutionality of legislative pension plans, New York did so on the rationale of permissible "compensation" while (at least as to pre-1971 legislative pensions), West Virginia apparently reasoned that the issue of pensions was not covered by the original constitutional provision or statutes enacted pursuant thereto.
The only other decision discussing the constitutionality of legislative pension plans is the 1948 decision in California of Knight v. Board of Administration, 32 Cal.2d 400, 196 P.2d 547 (Sup. Ct. 1948). However, California, in contrast to New Jersey, apparently had a specific constitutional provision which permitted the establishment of a retirement system for state employees. Cal. Const. Art. IV, § 22a. At the same time, the California Constitution provided that legislators "shall receive no compensation for their services other than that fixed by the constitution." Art. IV, § 23h. The court reasoned that this provision was concerned with current pay  rather than deferred compensation  namely, pension payments, and concluded:
The arguments in favor of a retirement plan are equally applicable to all persons who are servants of the state, whether they are elected or appointed officers in the strict sense, or the lowliest workman. One of the purposes of a retirement system is an inducement *134 which will enable the government to secure and retain a more qualified government personnel. That purpose is more important in the case of officers than ordinary employees when we consider the more important functions they perform. It must be recognized that among the state officers there are none whose duties are more vital to the state than those imposed upon the members of the legislature. We believe, therefore, that the purpose of the third constitutional provision above quoted will be more fully served if it embraces legislators. [32 Cal.2d at 404, 196 P.2d at 549]
Thus, although this decision is persuasive in light of California's provision for "fixed compensation," California's Constitution is distinguishable from that of New Jersey  and New York  because of its specific provision for retirement plans and because it has no specific limitation as to "continuance in office."
Nevertheless, all of the above decisions are persuasive, at least to the extent that similar challenges to similar constitutional provisions were presented to, and rejected by, eminent tribunals of our sister states. Finally, in resolving the constitutional challenge at issue herein, the court iterates the principle previously discussed  namely, that the Court is not only persuaded but, in fact, is bound by our own judicial presumption in favor of the validity of any legislative enactment. Put another way, "the Legislature has a broad discretion in assessing the need and the means requisite for the protection of the common weal; and fairly debatable questions of policy and procedure are resolved in favor of the power." Jamouneau v. Harner, supra, 16 N.J. at 515; New Jersey Chapt., Am. I.P. v. N.J. State Bd. of Professional Planners, 48 N.J. 581 (1967), app. dism. and cert. den., 389 U.S. 8, 88 S.Ct. 70, 19 L.Ed.2d 8 (1967).
In the present case plaintiffs contend that the Pension Act violates paragraph 7 because it involves receipt of monies subsequent to a legislator's term in office, which monies are not "fixed by law." Specifically, plaintiffs assert that the act provides for much more than a contributory plan which, with its provisions for lifelong annual payments after 60, results in different levels of compensation being paid to different legislators *135 for the same term of service. To plaintiffs the act permits nonuniformity of contributions by both the State and the individual legislators, with the result that "it becomes impossible to calculate how much compensation an individual legislator actually receives for one year of service." As such, plaintiffs conclude that, as the pension act provides for future payments that are in no way "fixed by law," this act cannot be sustained as permissible "compensation" and thus must be voided as proscribed "allowances" or "emoluments." See paragraph 7.
However, the General Assembly and the State Senate reject plaintiffs' argument that since pensions cannot be sustained as permissible compensation, they therefore constitute proscribed "allowances" or "emoluments." That is, although these defendants contend that pensions can be sustained as "compensation," they argue that a pension is sui-generis and, as such, is neither "compensation" nor an "allowance" or an "emolument." As such, defendants assert that paragraph 7, which is directed only to "compensation" and "allowances" or "emoluments," is in no way applicable to the issue of pensions and thus the validity of the Legislative pension act is not dependent on the dictates of the constitutional provision at issue herein. In support of their argument these defendants cite the Proceedings of the 1947 Constitutional Convention which evidence a focus on "salary." To them this focus indicates that the constitutional mandate that "compensation" be fixed by law means only that "salary" must be so fixed and that there was no intent "to proscribe the right of the Legislature to deal with the separate and distinct issue of pensions." In essence, these defendants maintain that the framers, "at most," had "overlooked" or "neglected" the pension issue and that, therefore, pensions are not in any way governed by the constitutional provisions relating to "compensation" and "allowances" or "emoluments." Thus, they conclude that there is absolutely no constitutional restraint on the Legislature's power to deal with the issue of pensions.
*136 However, defendants Leone, Byrne and Carragher deny that "compensation" is limited to salary and, instead, assert that "compensation" includes "all of those pecuniary benefits of public service commonly comprehended under that terminology," the "detailed specification" of which "was purposely left to the broad discretion of the Legislature." Thus, these defendants maintain that a pension is within the purview of "compensation." Moreover, they assert that a pension act is totally consistent with the 1947 Constitution which replaced a provision for a fixed constitutional compensation with a provision for flexible compensation to be established by legislative enactment. That is, "the concern of the drafters was to prohibit allowances and emoluments to legislators over their prescribed compensation and not the provision of a new mode or form of compensation to be fixed from time to time." Attorney General Opinion No. 12, at 6.
Thus, these defendants contend that the controlling question herein is whether the pension act conforms to the dictates of paragraph 7 applicable to permissible compensation. Relying on a long line of New Jersey cases cited supra, they contend that it is unquestionable that pensions for public employees are a legitimate mode of deferred compensation for services rendered. Thus, relying on Brydges, supra, defendants argue that pensions do not violate the constitutional provision requirement that compensation be paid "during continuance in office," for although actual payment is deferred, the compensation is, in fact, in return for services rendered while in office and the right to said compensation is, in fact, received "during continuance in office." Finally, these defendants reject plaintiffs' claims that the nonuniformity of benefits violates the provision requiring "fixed by law." In their view, "fixed by law" does not mean "mathematical exactness" or identity of compensation but, rather, it means that the compensation must be governed by a legislative enactment which fixes the method of calculation and payment and which is equally applicable to all *137 legislators. Thus, defendants conclude that, so viewed, the Legislative Pension Act does not violate the dictates of paragraph 7 and, in fact, "is totally consistent with the broad constitutional authorization for the enactment of innovative and flexible means to compensate persons for legislative services."
The court is constrained to agree with the position of defendants Leone, Byrne and Carragher. That is, the Court, on the one hand, rejects the other defendants' arguments that paragraph 7 is inapplicable to pensions and, as such, there is absolutely no restraint on the legislators' power to deal with pensions. Instead, the court recognizes that a pension is a legitimate mode of compensation for public employees and that our State has long provided for such compensation to other public employees by way of the basic Public Employees Retirement System, N.J.S.A. 43:15A-1 et seq., and by way of other pension acts, such as that applicable to judges, N.J.S.A. 43:6A-8 et seq., and that applicable to certain municipal employees, N.J.S.A. 43:13-3. It appears clear that our State Constitution was not intended to derive legislators of any and all types of pension benefits, and even plaintiffs admit as much. As such, it is reasonable to construe the "during continuance in office" requirement as comprehending the "right" to receive said compensation, when the "right" itself is received during the continuance in office and when the compensation underlying this right is earned while in office. Otherwise, any pension system for legislators would be per se invalid. The court rejects any argument that paragraph 7 dictates such a result. Finally, as for the requirement that compensation be "fixed by law," the court does not, in any way, see how this requirement is violated by the fact that, in its operation, the act will not provide a uniform pension for all legislators. In fact, the court sees very little, if any, relation between uniformity and the requirement that compensation be "fixed by law." The court notes that our other public employee pension acts not only permit a similar nonuniformity but *138 also provide for different pensions for different classes of employees. Compare N.J.S.A. 43:15A-61, N.J.S.A. 43:15A-100, N.J.S.A. 43:6A-8, N.J.S.A. 43:6A-9.1. Although it is true that paragraph 7 does not govern these other acts, the court finds that both reason and, in the case of pensions, necessity dictate that any uniformity required by "fixed by law" is satisfied if the law itself provides a method of computation and payment that is uniformly applicable to all legislators. Similarly, the court finds that as long as this method is "fixed by law," paragraph 7 does not require mathematical exactitude matching each portion of each pension payment to "compensation" for a particular year of legislative service.
Finally, in interpreting the constitution, the court again refers the parties to the words of our Supreme Court:
The spirit is its animating force, not the letter which killeth.

* * * * * * * *
A constitutional prohibition against the exercise of a particular power is in the nature of an exception, and it is the settled rule of judicial policy in this State that a legislative act will not be declared void unless its repugnancy to the constitution is clear beyond reasonable doubt. [Gangemi v. Berry, 25 N.J. 1, 10 (1957)]
For all the reasons articulated above, the court hereby holds that defendants are entitled to judgment as a matter of law on count I of plaintiffs' complaint, which count alleged the unconstitutionality of the Legislative Pension Act under paragraph 7.

II

Constitutionality of the Legislative Pension Act Under Art. IV, § IV, par. 8
The issue of the constitutionality of the Legislative Pension Act under paragraph 8 is also novel. Of course, if the court were to find that a "pension" is sui generis and, as such, is not "compensation," the court would not be bound *139 by the constitutional dictates precluding increases or decreases in compensation "until the legislative year following the next general election for members of the General Assembly," paragraph 8. For example, in reaching the holding that it was not unconstitutional to permit legislators to receive credit for service rendered prior to the enactment of the pension law, the Campbell court reasoned:
* * * Pensions are not traditional "salary," and by extension not either an "allowance" or "emolument" but rather are things sui generis which were not contemplated within the constitutional structure established in 1872. [202 S.E.2d at 376]
However, this holding, insofar as it was applicable to pre-1971 pension plans, is based on reasoning contrary to that previously articulated herein  namely, that "pensions" were not, in any way, covered by the then applicable constitutional provisions. As for pension plans enacted in 1971 and subsequent thereto, West Virginia, in contrast to New Jersey, had recently adopted a constitutional provision which expressly authorized a commission to deal with the issue of legislative compensation, including pensions, and thus, the Campbell court had before it a specific constitutional provision on which it could rely in determining the validity of any pension plan adopted pursuant thereto.
In any event, it is also arguable that, even if treated as compensation, a constitutional provision precluding a change in compensation during a term does not affect pensions because the beneficiary does not receive the pension during the term. See People v. Wright, 379 Ill. 328, 335, 40 N.E.2d 719, 724 ((Sup. Ct. 1942). The Wright court so held in sustaining the validity of a judicial pension system which provided for such increases during the term of the judges, despite a prohibition comparable to the one at issue herein. Yet, while it might be true that the pension is not received during the term, if the court adopts the rationale that the "right" is so received during the term, then the constitutional proscriptions precluding increases until the constitutionally *140 permissible waiting period would be applicable thereto.
The only other case on point is Brydges, supra. While the pensions in Brydges apparently did involve credit for prior legislative services and while Brydges did reason that the "right" to pensions was presently received, the validity of this prior credit under the New York constitutional provision analogous to paragraph 8 apparently was not raised. Thus, although the holding of Brydges had the effect of sustaining such prior credit, this court cannot find any reasoning therein which would persuade it to reach a similar result here.
In the present case the General Assembly and State Senate contend that the act should be enforced as written  namely, with an effective date of November 3, 1972 and with provision for purchase of credit for prior legislative service. In support of these contentions they essentially argue that pensions are not "compensation," and thus are not governed by paragraph 8. Alternatively, they claim that even if pensions are "compensation," paragraph 8 was not intended to preclude either an immediate effective date or purchase of prior credit for the pensions, for, following Wright, supra, the benefit thereof is not received until long after "the legislative year following the next general election for members of the General Assembly." However, particularly in light of the requirement in paragraph 7 that "compensation" be received "during continuance in office," it appears that, once again, the main arguments of these defendants depend on a finding that a "pension" is not "compensation."
However, as defendants Leone, Byrne and Carragher reason  that a "pension" is compensation, these defendants contend that the language of paragraph 8 clearly dictates that the act cannot be effective until January 8, 1974 and that it cannot provide for a purchase of credit for legislative service rendered prior to this date, for otherwise the act would contravene the constitutional prohibition against increases in compensation prior to the constitutionally permissible *141 waiting period, namely, "the legislative year following the next general election for members of the General Assembly."
To the extent just articulated, plaintiffs obviously agree with these defendants as to the unconstitutionality of the Legislative Pension Act. However, plaintiffs further contend that, even with its modifications, the act violates paragraph 8. To plaintiffs the act, even as modified, permits retroactive increases in compensation. That is, since the pension is a function of the compensation received in the final year of service, should this compensation be increased at sometime in the future, then, given that the pension is also a function of the number of years served as a legislator, the effect is to retroactively increase the compensation for each of these prior years. Similarly, even if such compensation is viewed as a "right to future payment," this right is subject to retroactive increases. To plaintiffs "a legislator will receive a pension based upon the false premise that his salary was at that higher level during his entire time of service." Thus, plaintiffs conclude that the entire act is violative of the dictates of paragraph 8 prohibiting retroactive increases in compensation.
In reviewing the positions articulated herein in light of the principles and reasoning in the first issue presented in this case, the court iterates its previous finding that a "pension" is, in fact, compensation and, as such, is governed by paragraph 8. Moreover, particularly since the court has also adopted the rationale that the "right" to said payment is presently received, I reject the reasoning of Wright, supra, for I find that the intent underlying paragraph 8 was to proscribe all forms of retroactive increases, regardless of when ultimate payment thereof is made.
However, plaintiffs' argument that the entire act essentially permits retroactive increases, while it appears persuasive, is not ultimately convincing. This argument is similar to the one that plaintiffs raised in contending that the act did not provide for compensation that was "fixed by *142 law." That is, both then  and now  plaintiffs proceed on the questionable premise that the constitutionality of the act depends upon a precise match-up between the pension payments ultimately received and the years to which these payments are attributable. However, although it is true that pensions are based on compensation received in the final year and that the final amount thereof is dependent on the number of years of service, the premise of plaintiffs' argument is that the figure thereby arrived at represents a sum total of equal amounts of additional compensation for each legislative year, which amounts, if based on an increased salary in the final year, represent increases in salary for prior years. However, at a minimum, the court does not find plaintiffs' premise to be the only rationale for the prescribed method of compensation. In fact, nowhere in the act does it state that the final pension figure represents the compensation suggested by plaintiffs. Rather, as discussed in Point I, supra, it appears that the act should be viewed as providing that each year, regardless of the then governing amount of salary, a legislator receives additional compensation, which compensation consists of the right to a pension to be computed and ultimately paid according to the statutory formula. This formula is not subject to increase, and thus the right dependent thereon is similarly not so subject. As such, the actual salary figure for the final year  while relevant to the amount of monies paid to a legislator  is constitutionally irrelevant insofar as it does not retroactively increase the "right" received in prior years. Put another way, plaintiffs' argument is essentially based on viewing pension as a "future right," to be retroactively divided among the years of legislative service, and thus, if the amount of this right is increased, so is the compensation applicable to prior years. However, the court does not so view the act and, in fact, it could not so view the act and still sustain it under the provision in paragraph 7 requiring receipt "during continuance in office." Instead, as stated above, I find that the act provides for receipt of a present right, *143 which right is determined by a fixed method of computation, and which method in and of itself does not provide for any increases. Consequently, this method does not provide for retroactive increases and, as such, is not violative of paragraph 8.
The court hereby holds that the act is unconstitutional to the extent that it has an effective date  and provides for the purchase of legislative service credit  prior to January 8, 1974, and that in all other respects the act is constitutional.
However, before disposing of this issue, the court must determine whether the act can be severed so as to delete the unconstitutional provisions thereof.

III

Severance
The principles governing the severability of a statute involve a determination of whether the Legislature intended the statute to stand or fall as a unitary whole and whether, even if such was the intent, said intent would be satisfied if the objectionable features of the statute could be excised without substantial impairment of the principal objectives of the law. In other words, the court will invalidate the entire statute only if the statute, absent the objectionable provisions, frustrates the legislative intent underlying the statute. See Affiliated Distillers Brands Corp. v. Sills, 60 N.J. 342, 345 (1972); Professional Planners, supra, 48 N.J. at 593-594.
In the instant case those defendants who could provide most insight into the legislative intent, namely, the members of the Legislature, have not briefed the severability issue, since their position is that the entire act is constitutional. Plaintiffs contend that the act is not severable, for, by fixing a new effective date and requiring prospective administration only, the act is substantially different from its original enactment. Specifically, as modified, the act eliminates as potential beneficiaries not only those legislators who served *144 in the 1972-73 session but, by invalidating the entire scheme of retroactive purchase of service credits, it also eliminates all those legislators who served in prior sessions.
However, defendants Leone, Byrne and Carragher contend that the intent of the act was to establish an entire system of benefits for legislators, of which the provisions for retroactive payment were only a part. Thus, separating one part from the whole does not impair the purpose to be served by the entire legislative scheme, for retention of all the other benefits is obviously consistent with the intent to provide a scheme of benefits none of which is dependent on the others for its implementation and effectiveness.
The court agrees with defendants that deletion of the unconstitutional provisions of the act does not substantially impair its objectives, for the principal objective appears to be establishment of a mandatory system of pension benefits consisting of the basic provisions of the PERS combined with additional provisions applicable only to legislators. Neither changing the effective date of the act nor deleting one portion of said additional provisions undermines this objective. As such, the court hereby holds that the act is severable and is to be enforced, as modified.

IV

Constitutionality of the Act Relating to Home District Offices
Although not briefed by defendants herein, yet raised in their answers, the court will first dispose of the mootness argument against plaintiffs' challenge. That is, defendants apparently contend that, since the appropriation was for 1974-75, the issue is now moot. However, the court rejects defendants' argument and refers the parties to Russo v. Governor, 22 N.J. 156 (1956), in which the court held that a state official who unlawfully received excess money was liable for its return. Thus, should the Court find that the appropriation at issue herein was invalid, then the issue is not moot *145 to the extent that the court has the power to order return of these appropriations.
Hence, turning to the merits of plaintiffs' constitutional challenges under paragraphs 7 and 8, the court finds that the principal issue is whether this appropriation constitutes "compensation," "allowances" or "emoluments," or whether it constitutes legitimate expenditures which are not governed by those constitutional provisions.
Once again, this issue is one of first impression in our State, although dictum in Wilentz, supra, indicates "that the evil to be avoided is pecuniary gain to the legislators over and above their stated compensation and not the provision of ancillary services or facilities, in and of the strictly legislative function." Attorney General Opinion No. 6, at 3. See Wilentz, supra, 129 N.J.L. at 609. In any event, other states have considered the problem and have distinguished appropriations for legitimate legislative expenses from either compensation or prohibited allowances. That is, courts have invalidated as "emoluments" those appropriations which cannot be found to have any relation to a legitimate legislative expense. See, e.g., State ex rel. Griffith v. Turner, 117 Kan. 755, 233 P. 510 (Sup. Ct. 1925); Peay v. Nolan, 157 Tenn. 222, 7 S.W.2d 815 (Sup. Ct. 1928). On the other hand, it is also true that "Unless the contrary is clearly expressed * * * the allowance of reasonable expenses incurred in the discharge of the official duties is neither salary, compensation, nor an emolument of the office." Manning v. Sims, 308 Ky. 587, 593, 213 S.W.2d 577, 580 (Ct. App. 1948).
In determining what constitutes reasonable expenses it is instructive to refer to the case of Spearman v. Williams, 415 P.2d 597 (1966), in which the Oklahoma Supreme Court stated:
The functions of government have grown and expanded greatly since statehood, many new boards, commissions and agencies having been created to carry out the ever increasing necessities, welfare and desires of our people. Many members of the Legislature, past *146 and present, have not maintained offices within which to transact legislative business in their districts. The Legislature has now, due to the present press of legislative business, deemed it advisable for each member thereof to maintain an office in their respective districts so they can be more available and accessible to advise and consult with their constituents, which the legislative body evidently thought would inure to the benefit of the whole state.
It is our conclusion that such office and traveling expenses incurred by members of the Legislative Council are expenses of the performance of official duties and are not compensation, salary or emoluments * * *. [at 602]
See also, State v. Guy, 107 N.W.2d 211 (N.D. Sup. Ct. 1961); Ferris v. Aten, 318 Mich. 528, 28 N.W.2d 899 (Sup. Ct. 1941); State v. Ferguson, 68 Ohio App. 189, 36 N.E.2d 500 (Ct. App. 1941), app. dism., 138 Ohio St. 617, 37 N.E.2d 544 (Sup. Ct. 1941); League of Carbon Cty. v. McPherson, 49 Wyo. 251, 54 P.2d 897 (Sup. Ct. 1936); State ex rel. Weldon v. Thomason, 142 Tenn. 527, 221 S.W. 491 (Sup. Ct. 1919). Cf. Holmes State Officers Compensation Comm'n, 57 Mich. App. 255; 226 N.W.2d 90 (Ct. App. 1974). Moreover, these appropriations do not become either "compensation," "allowances" or "emoluments" merely because they may incidentally reduce other expenses which would otherwise be borne by legislators. See generally, Manning, supra.
Thus, it is clear that "The courts have made a distinction between official expenses and personal expenses and concur that the Legislature has the power to appropriate public funds for the official expenses of all departments of the state government." 63 Am. Jur.2d, Public Officers and Employees, § 388 at 866.
Plaintiffs contend that if the appropriation for legislative home district offices is viewed as compensation, then it is invalid because it is effective immediately. See paragraph 8. However, they further assert that since the legislators realized a substantial benefit from this appropriation, it is therefore an "allowance" or "emolument" proscribed by paragraph 7. That is, plaintiffs contend that this appropriation cannot be *147 deemed to be a legitimate expenditure because there was no requirement that the offices be used exclusively for legislative business and because most of the items provided by the appropriation duplicate those available for legislators in Trenton. Thus, plaintiffs conclude that, however viewed, this appropriation violated paragraph 7 and/or 8.
However, on its face  and this is an on-its-face attack  the court finds that an appropriation for district home offices is rationally designed to facilitate the conduct of legislative business. As such, the act provides for a legitimate expenditure rather than an improper "allowance" or "emolument". I find that such an expenditure is separate and distinct from "compensation" as well as from "allowances" and "emoluments," for otherwise each such appropriation would be subject to constitutional attack under paragraphs 7 and 8 and, as such, would also be subject to continual judicial scrutiny. The result of such a finding is that the appropriation at issue herein is not governed by  and here not violative of  either paragraphs 7 or 8.
Finally, in support of this finding, the Court once again notes that, although this particular issue is a novel one in New Jersey, it is far from novel to require that courts exercise judicial restraint when asked to invalidate a statute. The court hereby finds that plaintiffs have not sustained the heavy burden imposed for a finding of unconstitutionality. Thus, defendants are entitled to judgment as a matter of law on count III of plaintiffs' complaint.
Therefore, the court hereby dismisses counts I and III of plaintiffs' complaint and also dismisses count II of said complaint, except to the extent that the court has ruled that the act is constitutional, only as modified. Defendants' cross-claim is also dismissed.